Evelyn L. STUART, Trustee of the Milton J. and Evelyn L. Stuart Trust and Successors, Appellant,

v.

WHALER'S COVE, INC., Richard L. Powers, Richard L. Powers, d/b/a Whaler's Cove Lodge, Inc., Appellees.

No. S–11952.

Supreme Court of Alaska.

Sept. 29, 2006.

Ray C. Preston, Law Offices of John M. Rice, P.C., Juneau, for Appellant.

Kristen D. Pettersen, Dillon & Findley, P.C., Juneau, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

This case presents the question of whether the superior court erred when it refrained from holding Whaler's Cove, Inc., in contempt for allegedly failing to comply with a prior order of the court. We conclude that because Whaler's Cove had made significant efforts to comply with the prior order, the

---

superior court was well within its discretion when it refused to hold Whaler's Cove in contempt.

## II. FACTS AND PROCEEDINGS

The Milton J. and Evelyn L. Stuart Trust, with Evelyn Stuart as the trustee ("Stuart"), and Whaler's Cove, Inc. ("Whaler's Cove"), the owner of the Whaler's Cove Lodge, both own property on the eastern end of Killisnoo Island in Southeast Alaska. A fifty-foot-wide right-of-way runs east-west, bisecting the eastern part of the island. One of Stuart's two parcels abuts the right-of-way; the other parcel is connected to the fifty-foot right-of-way by a ten-foot-wide right-of-way. The fifty-foot right-of-way runs through the property of Whaler's Cove before terminating at Killisnoo Harbor.

In the course of operating its lodge, Whaler's Cove both constructed and improved buildings that encroached on the right-of-way. Whaler's Cove also expanded an existing reservoir. After the expansion was complete, the reservoir along with its embankment extended twenty-nine feet into the right-of-way.

Stuart, seeking to have the encroachments removed, sued Whaler's Cove. At the end of the ensuing trial, the superior court determined that the "permanent encroachments . . . are unreasonable as a matter of law and fact." The superior court explained that the expanded reservoir and related embankment were unreasonable not just because they directly impeded the subdivision owners' private property rights in the right-of-way, but also because they made the right-of-way a largely impassable glacier in the winter. The superior court concluded that Whaler's Cove's "placement of permanent obstructions over the right of way, including erection of a berm/dam and water reservoir[,] constitute a nuisance and shall be removed at defendants' expense within six months of this order."

The superior court asked Stuart to prepare "an appropriate form of judgment." That judgment, signed by the court, stated that "[b]ased on the Findings of Fact and Conclusions of Law entered July 23, 2004, the defendants' placement of permanent obstructions over the right of way constitute[s] a nuisance." The judgment went on to declare that "[a]ll permanent obstructions over the right of way, including those obstructions specifically identified in the Court's July 23, 2004 Trial Findings of Fact and Conclusions of Law, shall be removed at defendants' expense by January 23, 2005."

After the judgment issued, Whaler's Cove moved the fuel station and all of the buildings and ramps that had encroached on the right-of-way. Whaler's Cove also made three attempts to move the reservoir and associated embankment off of the right-of-way and onto Whaler's Cove property. Whaler's Cove succeeded in moving all of the reservoir's water off of the right-of-way. However, the reservoir embankment still extends into the right-of-way. The parties dispute the extent to which the embankment continues to encroach—Richard Powers, the owner of Whaler's Cove, admits that the embankment extends into the right-of-way, but only by ten feet, while Stuart claims that the embankment encroaches by fifteen to twenty feet. Whaler's Cove contends that its work on the reservoir and embankment actually improved the right-of-way by preventing it from serving as a natural drainage ditch. Whaler's Cove also claims that as a result of its efforts, the reservoir has been moved south and thus further onto Whaler's Cove property than it was at the time the right-of-way was created.

Once the January 23, 2005 deadline for moving the encroachments had passed, Stuart filed a motion for an order to show cause for why Whaler's Cove should not be held in contempt for failing to move the encroaching embankment. After hearing oral argument on the motion, the superior court concluded that Whaler's Cove had exerted significant effort to reconstruct the reservoir so as to make the right-of-way more passable. The superior court denied Stuart's motion.

Stuart filed a motion for reconsideration, which the superior court also denied. Stuart now appeals.

## III. STANDARD OF REVIEW

Stuart argues that when the superior court denied her motion to show cause for why

Whaler's Cove should not be held in contempt, it accepted "all the facts put forward as true." According to Stuart, we should therefore analogize this case to a denial of summary judgment and use the de novo standard of review when deciding this appeal.

■ We decline to adopt Stuart's proposed standard of review. In the course of refusing to hold Whaler's Cove in contempt, the superior court made a number of factual findings, including that Whaler's Cove had made significant efforts to reconstruct the reservoir. "We review the superior court's factual findings on the issue of contempt for clear error." [1] While we review de novo a superior court's decision to hold someone in contempt pursuant to Alaska Civil Rule 90(b),[2] a superior court's decision not to hold a party in contempt is committed to the court's discretion and is one to which we will accord considerable deference.[3]

## IV. DISCUSSION

■ The superior court found that Whaler's Cove had made a significant effort to reconstruct the reservoir and that Whaler's Cove's efforts were designed to make the right-of-way safer and more passable. The record documents in detail the efforts Whaler's Cove made to reconstruct the reservoir, including using heavy equipment, draining the reservoir, installing a new liner, reinforcing the embankment to keep water off of the right-of-way, and digging a new overflow from the reservoir. A director of Whaler's Cove involved in the reconstruction process gave his opinion that the reconstructed embankment was helping to prevent the right-of-way from serving as a drainage channel. Given this evidence in the record and the absence of any contrary evidence, we conclude that the superior court's factual findings are not clearly erroneous.

Stuart argues that because Whaler's Cove had the physical capability to move the em-

bankment off of the right-of-way, the superior court should have held Whaler's Cove in contempt, even though Whaler's Cove admittedly did what it "could to improve the situation without sacrificing [its] water supply." The superior court determined that since Whaler's Cove had made significant efforts that appeared to have achieved the purpose of the previous order, namely making the right-of-way more passable, it would not hold Whaler's Cove in contempt. Indeed, the superior court recognized during the contempt hearing that requiring Whaler's Cove to move the reservoir and embankment further would likely result in the right-of-way becoming less passable. Given the superior court's weighing of the costs and benefits of strict compliance with its previous order, we decline to hold that the superior court abused its discretion.

■ Stuart further argues that the superior court's decision not to hold Whaler's Cove in contempt rested on the court's problematic focus on the present-day rather than the potential, future use of the right-of-way. Yet the superior court's decision not to hold Whaler's Cove in contempt need not prevent the court from addressing future problems with the right-of-way. A decision not to hold a party in contempt differs from a finding that a party satisfied a judgment. The superior court's past refusal to hold Whaler's Cove in contempt does not preclude Stuart from seeking future court intervention if circumstances change and it becomes clear that the embankment must be moved to make the right-of-way more passable or suitable for utility or road construction. Indeed, the superior court appeared to acknowledge the possibility that further action would need to be ordered when it stated that "it looks as if it's still not known if—if this [reconstruction] is going to be a fix. Or if—if, in fact, the reservoir is going to have to be moved fur-

---

1. *Willoya v. State, Dep't of Corr.,* 53 P.3d 1115, 1120 (Alaska 2002).

2. *Anchorage Police & Fire Ret. Sys. v. Gallion,* 65 P.3d 876, 879–80 (Alaska 2003).

3. *See Matanuska Elec. Ass'n v. Rewire the Board,* 36 P.3d 685, 700–701 (Alaska 2001) (noting that the clearly erroneous standard of review for factual findings in contempt cases "is consistent with the deferential review used by courts in other jurisdictions" and citing cases employing an abuse of discretion standard).

ther back or other steps taken just to make [the right-of-way] passable and safe." [4]

## V. CONCLUSION

For the above reasons we AFFIRM the superior court's decision not to hold Whaler's Cove in contempt.

---

**4.** Stuart further argues that the superior court incorrectly believed that bad faith was a necessary element of civil contempt and erroneously found Whaler's Cove's failure to comply with its order to be non-willful. We need not reach this argument because the superior court's decision to deny Stuart's motion had a basis apart from the superior court's determination that the willfulness element of contempt had not been satisfied. As we have explained, the superior court's finding that Whaler's Cove had made significant efforts to move the embankment was sufficient justification for its discretionary decision not to hold Whaler's Cove in contempt.