Samuel Corbin JOHNSON, III, Appellant,

v.

Kathleen Finnerty JOHNSON, Appellee.

No. S–13512.

Supreme Court of Alaska.

Sept. 24, 2010.

Robert C. Erwin, Robert C. Erwin, LLC, Anchorage, for Appellant.

Appellee did not participate.

Before: FABE, WINFREE, CHRISTEN, and STOWERS, Justices, and EASTAUGH, Senior Justice pro tem.*

*OPINION*

EASTAUGH, Senior Justice pro tem.

## I. INTRODUCTION

This appeal concerns post-divorce efforts by both parties to enforce, correct, or modify their property division. Sam Johnson challenges various post-divorce superior court rulings, including: an award of Alaska Civil Rule 82(b)(3) full attorney's fees to Kathleen Johnson after Sam made three unsuccessful motions to enforce their property division; the denial of Sam's show-cause motion to force Kathleen to produce or account for his personal property; and the denial of his motion for Rule 82 fees on the judgment entered after remand from a prior appeal. Because Sam's three enforcement motions were in part potentially meritorious and thus not "vexatious or bad faith conduct," we reverse part of Kathleen's first full fees award. We also vacate the denial of Sam's show-cause motion, because it raised unresolved genuine, material issues of fact. We otherwise affirm.

## II. FACTS AND PROCEEDINGS

### A. Prior Proceedings

Kathleen and Sam Johnson married in 1972 and divorced in June 2007, after a four-day trial. The superior court explained in its findings and conclusions that it was making an "approximately" 50/50 division of the parties' property. It divided, among other things, the parties' "Azalea" and "Glacier" real properties and the associated personal property. As to the Azalea personalty, the superior court seems to have largely accepted the appraised value of $121,927.50, because it awarded each party $60,000 of the Azalea personalty without awarding either party specific items.

---

* Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Rule 23(a) of the Rules Governing the Administration of All Courts.

The court also entered a qualified domestic relations order (QDRO) for Sam's military retirement; it ordered Sam to pay Kathleen 50 percent of his military retirement each month until the QDRO payments began. The court entered a similar, but not identical, QDRO for Kathleen's retirement.

Sam timely sought clarification, but did not raise the issues now before us.

This is Sam's third appeal relating to the divorce.[1] The issues he now raises require a detailed description of the parties' post-divorce motion practice.

### B. Sam's First Motion To Compel

In March 2008, while his first appeal was pending, Sam asked the superior court to compel Kathleen to: (1) return geotechnical road fabric Sam had purchased after separation; (2) reimburse him for heating fuel he purchased for the Glacier property during the divorce proceedings and pay for a later fuel delivery; and (3) "return" some 28 items of Azalea personalty listed in his motion papers and described as "non-marital."[2]

Kathleen responded that Sam's motion was frivolous, was deficient as not identifying the order to be enforced, raised disputes litigated at trial, and sought untimely reconsideration.

Sam replied that relief was authorized by Civil Rule 70. He also asserted that the superior court's findings and conclusions "require transfer" of the disputed items.

By order dated July 30, 2008, the superior court denied Sam's motion as to the road fabric, noting that because Sam thought his brother had taken it, Sam should pursue a claim against his brother, not Kathleen. It also denied the motion as to the fuel, finding it was Kathleen's because it went with the Glacier realty awarded to her. But as to the disputed Azalea personalty, the order provided that "[t]he heirlooms from [Sam's] family are to be returned to him if [Kathleen] has them. If [she] no longer has the items, she is to provide an account for what happened to them, if she knows."

### C. Sam's Motion To Correct Clerical Mistake

Also in March 2008 Sam, citing Civil Rules 60(a) and 60(b)(1), moved to correct what he called a "clerical mistake" or error in Kathleen's QDRO (the QDRO dividing Sam's retirement payments). He contended that the court made a clerical mistake in ordering that even if Kathleen remarried, she would receive payments under her QDRO, whereas if he remarried he would receive no benefits under the QDRO dividing her pension.

Kathleen's opposition argued that Sam's motion was frivolous and of "no merit" under either rule. She denied any error and asserted that as a matter of law her remarriage would not affect her benefits. She also argued that Sam had waived the issue, because every draft of the proposed QDRO had contained the same provision, Sam's expert had reviewed the provision, and Sam's trial objections had not addressed it.

The superior court denied Sam's motion. The denial order essentially agreed with Kathleen. Sam appealed. We affirmed, because "the remarriage provisions were neither a clerical error nor a mistake."[3]

### D. Sam's Second Motion To Compel

While his first motion to compel was pending, Sam filed a second motion to compel. It asserted that: he had been awarded $60,000 of the Azalea personal property; he "did not receive his personal property as was awarded" to him; most of the items were "personal" to his family and had been owned by him

---

1. *Johnson v. Johnson*, Mem. Op. & J. No. 1335, 2009 WL 564692 (Alaska, Mar. 4, 2009), resolved his first appeal. We there remanded for correction of the double-counting of a truck awarded to Sam and for consideration of Sam's claim for credits for post-separation costs he allegedly incurred to maintain marital property. *Id.* We otherwise affirmed. *Id.*

*Johnson v. Johnson*, 214 P.3d 369 (Alaska 2009), resolved his second appeal. We there rejected Sam's argument that Kathleen's QDRO contained a clerical mistake warranting correction, and affirmed. *Id.*

2. For example, Sam sought his father's oil can, kitchen items that had belonged to his grandmother, and a dresser his mother had given him before he married.

3. *See Johnson*, 214 P.3d at 372.

before the marriage; and the remaining items were "attached to his military career." This motion again listed the 28–some items. His supporting affidavit asserted that he had received Azalea items whose value was much less than his $60,000 award, and that he was seeking return of items including "pre-marital, inherited and other items."

Kathleen argued in opposition that, as to the Azalea items, the second motion to compel was identical to the first and thus redundant, and should be summarily denied. Her unsworn opposition also inferentially denied that she possessed any of Sam's personal property.

On July 30, 2008, the same day it denied Sam's first motion to compel, the court denied his second motion to compel as "redundant."

### E. Kathleen's First Award Of Actual Attorney's Fees

After the superior court denied Sam's motion to correct and his two motions to compel, Kathleen sought Civil Rule 82(b)(3) actual attorney's fees as to those three motions. Over Sam's opposition, the superior court awarded Kathleen actual fees of $7,272.87. We elaborate on this fees dispute and the court's rulings in Part III.A, which considers whether it was error to grant Kathleen's first full-fees motion.

### F. Kathleen's Motion For Order To Show Cause

Before her first fees motion was finally resolved, Kathleen filed a show-cause motion to enforce Sam's interim post-divorce obligation to pay her half of his retirement pay each month until she began receiving direct payments from the Defense Finance and Accounting Service (DFAS). She claimed that Sam did not pay her in October, November, and December 2007, and asked the court to order Sam "to show cause why he should not be held in contempt for willfully violating the Court's order...."

Sam opposed the motion. After considering documentary evidence admitted without objection at a hearing, the superior court found that Sam had not made the October, November, and December payments. It founded its ruling on Sam's admission that he had not paid in October, "the lack of proof of payment in November," and Sam's December bank statement that showed that he received the full DFAS payment on December 2.

We elaborate on the arguments and ruling below in Part III.C, which addresses Sam's argument that it was error to find that he did not make the December payment.

### G. Sam's Cross–Motion For Order To Show Cause

When he opposed Kathleen's show-cause motion, Sam cross-moved for an order requiring her to show cause "why she should not be held in contempt for willful violation of the court orders requiring her to file an accounting of the personal property in her possession [from] the Azalea residence." The cross-motion also argued that if Kathleen did not give him those items, their value should be offset against the retirement payments awarded to Kathleen.

Kathleen opposed the cross-motion and, after Sam replied, the superior court denied the cross-motion without explanation. The court also denied Sam's motion to reconsider the denial. We elaborate on the parties' superior court arguments in Part III.B, which addresses Sam's argument that it was error to deny his cross-motion.

### H. Kathleen's Second Award Of Actual Attorney's Fees

In a second motion for actual fees, Kathleen sought the fees she incurred in pursuing her show-cause motion and in opposing Sam's motions for reconsideration of her first full fees award and his motion for reconsideration of the denial of his show-cause cross-motion. The superior court granted her motion and awarded her "full reasonable" attorney's fees of $4,141. The court explained that "Sam's motion[s] were repetitive and not well taken, and raised no issues not previously decided by the Court. Under Civil Rule 82, Kathleen is entitled to full fees on these motions." Citing AS 09.50.040, the court also stated it was awarding her full fees on her show-cause motion as damages caused by

Sam's failure to comply with the court's QDRO.

## I. Remand Proceedings After First Appeal

On March 4, 2009, we issued our MO & J in *Johnson v. Johnson*.[4] We there remanded because the property division erroneously double-counted a truck awarded to Sam and did not resolve all of Sam's claims for credit for his post-separation expenses.[5]

Following an evidentiary hearing on remand, the superior court ordered Kathleen to pay Sam $24,418 (the value of the truck plus a partial credit for post-separation expenses), minus $6,352.17 (what Sam owed Kathleen as retirement payments). When Kathleen then asked the court to offset her unpaid attorney's fees awards, Sam opposed, on the grounds the fees were awarded before we issued our MO & J and were being appealed in the case, S–13512, now before us. Nonetheless, the final judgment offset Kathleen's prior fees awards against the value of the truck and Sam's credits, giving Sam a net judgment of $6,132.19.

Sam then moved for Rule 82 attorney's fees on the theory that he had recovered a money judgment in a case contested without trial. The superior court denied Sam's fees motion, explaining that fees were not appropriate because the corrections "were not due to post-trial litigation or enforcement," but rather to correction of a trial error. We elaborate on these facts in Part III.D, which addresses Sam's contention that it was error to deny his fees motion.

Sam appeals some of these rulings. Kathleen has filed no brief on appeal.

## III. DISCUSSION

### A. Whether It Was An Abuse Of Discretion To Award Kathleen Full Reasonable Attorney's Fees On Sam's First Three Post–Trial Motions

#### 1. The award and Sam's contentions

After denying Sam's first three post-trial motions, the superior court granted Kathleen's motion for full reasonable fees of $7,272.87. Sam argues that it was error to award full fees.[6]

The January 2009 full-fees order cited four subparagraphs of Civil Rule 82(b)(3) in support and largely accepted Kathleen's contentions.[7]

Citing Rule 82(b)(3)(F), the order found that the claims Sam made in those motions "were not reasonable," and that full fees were "therefore necessary." It stated that Sam's first motion to compel was largely an untimely motion to reconsider, and that to the extent it sought compliance with an earlier order, his motion "did not cite the earlier order or explain his failure to do so." It found that Sam's motion to correct "was also an untimely motion to reconsider," was founded "on an incorrect legal premise," and identified a mistake that "was not clerical."

---

4. Mem. Op. & J. No. 1335, 2009 WL 564692 (Alaska, Mar. 4, 2009).

5. *Id.* at *3, 5–6.

6. He does not contend that the fees incurred were unreasonable in amount.

7. Rule 82(b)(3) provides:
 The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
 (A) the complexity of the litigation;
 (B) length of the trial;
 (C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
 (D) the reasonableness of the number of attorneys used;
 (E) the attorneys' efforts to minimize fees;
 (F) the reasonableness of the claims and defenses pursued by each side;
 (G) vexatious or bad faith conduct;
 (H) the relationship between the amount of work performed and the significance of the matters at stake;
 (I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
 (J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
 (K) other equitable factors deemed relevant.
 If the court varies an award, the court shall explain the reasons for the variation.

And it found that Sam's second motion to compel was "redundant" and that "Kathleen never should have been put to the expense of defending the motion at all."

Citing Rule 82(b)(3)(G), it concluded that awarding full fees was "also appropriate ... for vexatious and bad faith litigation conduct, as set forth above."

Citing Rule 82(b)(3)(H), it found that awarding full fees was appropriate because the effort and fees imposed on Kathleen were "unreasonably large compared to the value of the items at stake."

Citing Rule 82(b)(3)(K)'s "other equitable factors" provision, it found that awarding full fees was appropriate because Sam's decision to "continu[e] the litigation of matters that could or should have been litigated at trial, or that were in fact litigated to conclusion at trial," effectively "devalue[d] the assets awarded to Kathleen by requiring her to litigate repeatedly over the same issues."

Sam argues that the record does not support the finding that his motions were ill-founded or made in bad faith. He asserts that his motions were directed at items of personal property that he had been awarded but never received, and did not challenge the original property award.[8] He also implies that full fees were not warranted as a matter

of law on his first motion to compel because it partially succeeded.

■ We usually review for abuse of discretion a Rule 82 award of full reasonable attorney's fees.[9] An abuse of discretion exists if an award is "arbitrary, capricious, manifestly unreasonable, or the result of an improper motive."[10] Because the award of actual fees calls into question Sam's litigation conduct and the potential merits of Sam's underlying three motions, we assess de novo the legal and factual viability of his motions and review relevant findings of fact for clear error.[11]

■ A prevailing party in a civil case is normally entitled to an award of attorney's fees, per Rule 82.[12] Divorce cases are usually excepted from this general rule; fees awards in divorce cases are typically based on the parties' relative economic situations and earning powers, rather than prevailing party status.[13] This "divorce exception" to Rule 82 is based on a broad reading of AS 25.24.140(a)(1), and on the reality that there is usually no prevailing party in a divorce case.[14] Nonetheless, we have held that Rule 82 applies to post-judgment modification and enforcement matters in domestic relations disputes[15] and that fees are appropriately

---

8. Sam's brief asserted that the court made no findings of fact justifying full reasonable fees, and his excerpt did not contain the superior court's January 25, 2009 order containing the findings discussed above. Independently finding the January order in the record, we ordered Sam's attorney to address the oversight at oral argument on appeal. We describe his corrected contentions above.

9. *Hopper v. Hopper*, 171 P.3d 124, 133 (Alaska 2007) (applying abuse of discretion standard in reviewing award of full reasonable fees on post-divorce Rule 60(b) motion).

10. *McGee v. McGee*, 974 P.2d 983, 987–88 (Alaska 1999) (applying abuse of discretion standard in reviewing award of fees on post-divorce Rule 60(b) motion).

11. *See State, Dep't of Revenue, Child Support Enforcement Div. v. Allsop*, 902 P.2d 790, 795–96 (Alaska 1995) (assessing viability of CSED's defense de novo and reviewing factual findings for clear error in reversing decision to award presumed father Rule 82 full fees in child support collection case).

12. Rule 82(a) provides:

> Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

13. *Koller v. Reft*, 71 P.3d 800, 808 (Alaska 2003) (explaining divorce exception to Rule 82).

14. *Id.*

15. *Powell v. Powell*, 194 P.3d 364, 372–73 (Alaska 2008) (applying Rule 82 when former wife filed Rule 60(b) motion to modify property division); *McGee*, 974 P.2d at 992 (applying Rule 82 when former wife filed Rule 60(b) motion to modify dissolution decree); *Saltz v. Saltz*, 903 P.2d 1070, 1071 (Alaska 1995) (applying Rule 82 when former wife alleged former husband had not paid spousal support, and moved to reduce her spousal support claim to judgment); *Lowe v. Lowe*, 817 P.2d 453, 460 (Alaska 1991) (citing *L.L.M. v. P.M.*, 754 P.2d 262, 264 (Alaska 1988)) (holding Rule 82 applied when former wife moved to modify dissolution decree to award her share of former husband's military retirement);

awarded under the prevailing-party standard of Rule 82 as to post-judgment money and property disputes.[16] Rule 82 consequently applies to the parties' post-judgment enforcement motions in this case.

Normally only partial fees are awarded under Rule 82,[17] but Rule 82(b)(3) lists factors that may permit a court to depart from a partial fees award calculated under Rule 82(b)(1) and (2), and to award enhanced or even full reasonable fees.[18] We have held that "[i]n general, a trial court has broad discretion to award Rule 82 attorney's fees in amounts exceeding those prescribed by the schedule of the rule, so long as the court specifies in the record its reasons for departing from the schedule." [19]

■ A Rule 82(b)(3) award of full fees is "manifestly unreasonable" absent a finding of bad faith or vexatious conduct.[20] Black's Law Dictionary defines "bad faith" as "[d]is-

honesty of belief or purpose." [21] In the attorney's fees context, we have equated "bad faith" with "devoid of good faith." [22] Therefore, enhanced fees may be awarded under any of the subparagraphs of Rule 82(b)(3), but full fees may be awarded under Rule 82(b)(3) only if the "vexatious or bad faith conduct" standard of Rule 82(b)(3)(G) is satisfied.

As we stated above, whether it was error to award full reasonable fees as to Sam's first three motions turns on their potential merit.[23]

## 2. First motion to compel

We first consider Sam's initial motion to compel. It made three requests: (1) return of the road fabric purchased for the Glacier property; (2) reimbursement for fuel Sam purchased for the Glacier property and impo-

---

*Hartland v. Hartland*, 777 P.2d 636, 644 (Alaska 1989) (holding that Rule 82, not divorce exception, applied when former wife moved to enforce property division).

16. *Lowe*, 817 P.2d at 460.

17. Alaska R. Civ. P. 82(b)(1) (scheduling partial fees awards for parties recovering money judgments); Alaska R. Civ. P. 82(b)(2) (specifying percentages of actual fees for partial fees awards to parties not recovering money judgments).

18. Rule 77(j) also allows awarding attorney's fees against a party presenting a "frivolous or unnecessary" motion. It is not necessary in this case to distinguish between full fees awards under Rule 77 and Rule 82.

19. *United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt*, 38 P.3d 528, 535 (Alaska 2001) (quoting *State v. Johnson*, 958 P.2d 440, 445 n. 10 (Alaska 1998)) (affirming Rule 82(b)(3) award of enhanced fees because superior court adequately explained why it deviated from rule's schedule).

20. *Cf. Crittell v. Bingo*, 83 P.3d 532, 537 & n. 20 (Alaska 2004) (affirming Rule 82(b)(3) full fees award because record supported findings of vexatious and bad faith conduct).
Our cases may also allow full reasonable fees awards under Rule 82 if a claim is frivolous, even absent bad faith. *Compare State Farm Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*, 843 P.2d 1210, 1212 (Alaska 1992) (stating that full fees are permitted if party asserts frivolous claim, litigates in bad faith, or is liable under indemnity clause, or if award is made per express contract provision), *Van Dort v. Culliton*, 797 P.2d 642, 644 (Alaska 1990) (stating that "departure from

the [Rule 82] fee schedule, even to the extent of a full award of actual fees, may be justified where the court finds that a losing party's claim or defense was 'frivolous, vexatious, or devoid of good faith' "), *and Crawford & Co. v. Vienna*, 744 P.2d 1175, 1178 n. 4 (Alaska 1987) (stating that because case was frivolous, "full or substantially full attorneys' fees may be imposed" on remand, even though plaintiffs had not acted in bad faith), *with Aloha Lumber Corp. v. Univ. of Alaska*, 994 P.2d 991, 1003 (Alaska 1999) (implying that full fees could not be awarded based on finding of only frivolousness).
The superior court did not expressly find that Sam's motions were "frivolous." It characterized the claims in the motions as "not reasonable." It also noted that it had not awarded fees after trial and that Sam's motions litigated matters that had been or could have been litigated at trial. It then stated that "[h]ad Sam pursued the type of baseless and unsupported claims made in motions since trial, at or before the time of trial, the Court would likely have awarded fees to Kathleen on that basis." If frivolousness alone does justify full fees awards under Rule 82, it nonetheless does not affect the result we reach as to Kathleen's first full fees award. That is so because our ultimate conclusions about the potential merits of two of Sam's motions preclude characterizing those two motions as frivolous.

21. BLACK'S LAW DICTIONARY 149 (8th ed. 1999).

22. *See Van Dort*, 797 P.2d at 644 (quoting *State v. Univ. of Alaska*, 624 P.2d 807, 818 (Alaska 1981)).

23. *See supra* note 11 and accompanying text.

sition on Kathleen of an unpaid Glacier property fuel invoice; and (3) "return" of some 28 items of Azalea personal property. The superior court largely denied the three requests, but denial does not in itself establish that the requests were made vexatiously or in bad faith. The issue is not whether they were ultimately unsuccessful, but whether they were collectively or individually so lacking in merit that it is permissible to infer that Sam or his lawyer acted in bad faith or engaged in vexatious litigation conduct.[24] If a request was either legally or factually so deficient as to reasonably permit an inference of vexatious or bad faith litigation conduct, we must affirm the award as to that request. Conversely, to prevail on appeal, Sam must demonstrate that the request was neither legally nor factually so deficient as to permit such an inference.

Although we have never said so explicitly, our cases suggest that a motion to compel is procedurally appropriate if the moving party has an established legal right to the relief sought.[25] The question is therefore whether it would have been unreasonable for a litigant in Sam's position to believe that he had an established legal right to the requested items.

■ The disputed rolls of road fabric appear to have been part of the Glacier personalty, which the findings and conclusions had expressly awarded to Sam. Sam's road fabric request thus sought items that arguably had been awarded to him. This request was not so legally deficient as to warrant an inference of vexatiousness or bad faith.

The road fabric request was also factually sufficient. The exhibits supporting the motion included letters between the parties' lawyers discussing the road fabric. Kathleen's lawyer's letters did not deny the existence of the rolls, or that they had been on the property, although one denied any concealment or interference with Sam's opportunities to recover the fabric. Admissible facts therefore reasonably permitted inferences that at least three rolls of road fabric were missing, that Kathleen possessed the Glacier property at relevant times, and that she might have somehow prevented Sam from recovering the missing rolls or knew what had happened to them. Whether Kathleen permitted Sam's brother to take the rolls or whether the rolls were still at the Glacier property during her possession, the request seeking an accounting of the road fabric was potentially meritorious.

We turn to Sam's fuel request. Sam had argued at trial that he should get an offset for one-half the cost of a tank-load of fuel for the Glacier property, but his first motion to compel asserted that Kathleen was responsible for the cost of the entire tank-load, and that she should also pay for another billed, but unpaid for, delivery. The divorce findings and conclusions did not specifically mention Sam's reimbursement request; they instead generally provided that "the utility obligations" would "simply go with their respective properties," and awarded the Glacier realty to Kathleen.

That general provision could reasonably be read as imposing the fuel obligation, at least as to any unpaid fuel invoice, on Kathleen. Because it relied on that provision, Sam's post-trial fuel request was at least in part not so legally deficient as to give rise to a reasonable inference of vexatiousness or bad faith.[26]

**24.** See State, Dep't of Revenue, Child Support Enforcement Div. v. Allsop, 902 P.2d 790, 795–96 (Alaska 1995) (assessing viability of defendant's argument and reversing plaintiff's full fees award because "[defendant's] legal position [was] tenable and not so devoid of merit as to indicate a bad faith or vexatious intent").

**25.** See, e.g., Edelman v. Edelman, 61 P.3d 1, 3–4 (Alaska 2002) (affirming denial of former wife's motion to compel husband to assign Exxon claims because property division did not establish her right to those claims); Vill. of Chefornak v. Hooper Bay Constr. Co., 758 P.2d 1266, 1268–69 (Alaska 1988) (affirming grant of motion to compel party to make payments in accordance with prior judgment); Uhl v. Uhl, Mem. Op. & J. No. 0110, 1982 WL 889009 at *2 (Alaska, July 1, 1982) (affirming grant of former husband's motion to compel former wife to return particular items of personal property awarded him in divorce).

**26.** At trial Sam did not ask the court to require Kathleen to pay for the unpaid-for fuel. The unpaid-for load was delivered April 12, 2007; trial ended May 18, 2007. The invoice supporting Sam's first motion to compel was dated "06/30/07." The record contains no earlier invoices for the April delivery. The record does

Sam's fuel request was also factually sufficient, at least in part. Trial testimony supported the request for reimbursement of the fuel Sam had paid for, and exhibits filed with his motion included the unpaid invoice and correspondence between the lawyers discussing the fuel dispute. Kathleen's memorandum in opposition did not even mention the unpaid invoice. Even though they denied any legal basis for Sam's fuel claims, the letters from Kathleen's lawyer did not deny any salient facts. The exhibits therefore reasonably permitted inferences that Sam had filled the tank after separation, and that when Kathleen took possession of the Glacier home following the divorce, she acquired fuel that Sam had paid for and fuel that no one had yet paid for. These facts would have supported the grant of his fuel request had Sam succeeded in convincing the court that the "utility obligations" that went with the Glacier property included either or both of the fuel bills.

Finally, we turn to the sufficiency of the request for the Azalea items. Sam asserted below that they were "non-marital" or "inherited." Even though the parties ultimately waived the opportunity to litigate the division of the Azalea personalty on that basis,[27] by ordering Kathleen to return the "heirlooms" if she had them, the superior court implicitly concluded that the "heirlooms" were indeed Sam's. Because neither party appealed the heirloom order, we do not independently inquire into that aspect of Sam's request; instead, we accept as law of the case the superior court's conclusion that Sam had a right to those items.[28] We therefore conclude that Sam's request was not so legally deficient as to warrant an inference of vexatious or bad faith litigation conduct.

It is unclear whether the superior court used "heirlooms" rigorously[29] or as a shorthand reference to all of the items Sam sought. Some were not heirlooms, and Sam had no legitimate claim to others.[30] But it does not matter precisely what the court intended, because the heirloom order established the substantial legal sufficiency of Sam's request as to most of the disputed Azalea items.

Nor was the Azalea request factually deficient. The heirloom order necessarily accepted Sam's contention that these items were his. Admissible facts reasonably permitted an inference that Kathleen either still had the items or knew what had happened to them. Sam's motion with respect to the Azalea items was therefore not so factually

---

not establish that Sam was obliged to raise the unpaid-for delivery claim at trial, or that he was unreasonable in first raising that claim in his 2008 motion to compel.

**27.** Very late in the divorce trial, Sam argued for the first time that many Azalea items were not marital property—and thus not to be "charged against [him]" in the property division—because he received them as gifts or inheritance or acquired them before marriage. Kathleen's attorney argued that because it was "a wash," the court should treat all the Azalea items as marital rather than differentiating marital and non-marital items. The court noted in response that it had to address the characterization issue after Sam raised it. Neither party presented a transmutation argument as to any of these items.

After testimony ended, each party submitted a spreadsheet distinguishing marital and non-marital Azalea items. The findings and conclusions did not differentiate items on that basis, but simply awarded $60,000 of the Azalea personalty to Sam, and $60,000 to Kathleen, apparently treating it all as marital. Neither party sought clarification or reconsideration of the characterization issue.

**28.** The law of the case doctrine prohibits review of "issues that have been fully litigated in the superior court and as to which no timely appeal has been made" absent "exceptional circumstances presenting a clear error constituting manifest injustice." *Dunlap v. Dunlap*, 131 P.3d 471, 475–76 (Alaska 2006) (considering child support order settled and unreviewable because appellant failed to seek timely review) (internal quotation marks omitted).

**29.** Black's Law Dictionary, 742 (8th ed. 1999), defines "heirloom" as:

1. An item of personal property that by local custom, contrary to the usual legal rule, descends to the heir along with the inheritance, instead of passing to the executor or administrator of the last owner.... 2. Popularly, a treasured possession of great sentimental value passed down through generations within a family.

**30.** For example, at trial, Sam had waived any claim to a painting by Kathleen's mother, the compact collection, and the bed in the master bedroom. *See Jaymot v. Skillings–Donat*, 216 P.3d 534, 546 (Alaska 2009) (holding issue not raised in trial court is waived on appeal).

deficient as to give rise to an inference of vexatious or bad faith conduct.

Thus, with minor exceptions, each of Sam's three requests had potential legal and factual merit. Because most of the requests actually or ostensibly sought to recover items Sam could have reasonably believed had been awarded to him in the property division, Sam's first motion to compel was not so legally deficient as to support an award of full fees. We do not need to consider whether a finding of vexatious or bad faith conduct could stand if a party's litigation efforts largely had no potential merit or were not fairly disputable. The three requests made in Sam's first motion to compel were not, individually or collectively, so lacking in legal or factual merit that full fees could be awarded under Rule 82(b)(3)(G).[31]

The January 2009 order granting full fees also made findings under other subparagraphs of Rule 82(b)(3). But because full fees may not be awarded under Rule 82(b)(3) except under Rule 82(b)(3)(G),[32] these other findings could support an award of full fees only if they reasonably permit an inference of vexatious or bad faith litigation conduct satisfying Rule 82(b)(3)(G). The order states that a full fees award was "also appropriate under Rule 82(b)(3)(G), for vexatious and bad faith litigation conduct, *as set forth above*." (Emphasis added.) Several of these prior— "as set forth above"—findings were relevant. Thus, the order had found that the "claims made by Sam in the motions at issue were not reasonable." And it had found that the first motion to compel was made "long after trial," was largely an untimely reconsideration motion, and cited no order to be en-

forced. In a subsequent finding—and thus not one "set forth above"—the order characterized Sam's conduct as pursuing "baseless and unsupported claims" after trial.[33] To the extent these other findings pertain to the potential legal or factual merit of the first motion to compel, they do not warrant an award of full fees, for the reasons we discussed above.

We therefore conclude that it was error to award full reasonable fees as to Sam's first motion to compel.

### 3. Second motion to compel

We turn to Sam's second motion to compel, filed while his first was pending. Both were decided the same day, some three months after Sam filed the second motion; the court denied the second as "redundant," and later awarded Kathleen full fees as to it because she "never should have been put to the expense of defending [against] the [second] motion at all."

 In response to a question from this court at oral argument, Sam's lawyer agreed that the second motion was redundant. But we note that the second motion addressed only the Azalea items (not the road fabric or fuel claims), and that it elaborated on the Azalea items request legally and factually, in asserting that most of the items were personal to Sam's family and were owned by Sam before the marriage, and that the remaining items were "attached" to his military career. It was also accompanied by Sam's affidavit, which explained the provenance of many of the disputed items. The second motion was

---

**31.** The record contains correspondence between the parties' lawyers regarding the Azalea items, the fuel, and the road fabric. That correspondence, even when reviewed deferentially to the findings awarding full fees, provides no support for finding that Sam asserted his three requests vexatiously or in bad faith.

**32.** We consequently do not need to consider the superior court's conclusions that full fees were also justified under Rule 82(b)(3)(F), (H), and (K). *See supra* note 20 and accompanying text.

**33.** The order also awarded full fees under Rule 82(b)(3)(H), finding that Kathleen was forced to incur fees that were "unreasonably large compared to the value of the items at stake." This

finding is in part factually incorrect: the fuel and road fabric disputes were together worth more than $3,500. It is also in part irrelevant: Sam conceded that some of the Azalea items had minimal economic value, but many items had significant emotional value to Sam. For example, the "thousands" of family photographs Kathleen allegedly refused to share (or copy) had nonfinancial value that justified Sam's motion. *Cf. Beal v. Beal*, 88 P.3d 104, 118 (Alaska 2004) (acknowledging relevance of sentimental value in affirming superior court's decision to award "painting of almost entirely sentimental value to the spouse who does not receive primary physical custody of the child").

filed April 18, 2008, several days before Kathleen filed her opposition to Sam's first motion. No doubt many or all of the contentions advanced in Sam's second motion to compel and its supporting papers could or should have been raised in the first. Kathleen therefore might have been awarded enhanced fees for having to address the Azalea items twice, initially in opposing the first motion, and then in addressing the expanded contentions in the second. But even though both motions sought the same 28–some items, the second motion and the supporting affidavit helpfully clarified the potential merit in Sam's request. Mere redundancy, under the circumstances, does not justify awarding full reasonable fees as to the second motion.

Moreover, the heirloom order established that at least some of the claims made in Sam's second motion had merit. And because Sam filed the second motion before the heirloom order granted him partial relief on his first motion, bad faith cannot be inferred from his effort to refine his as-yet unresolved contentions.

Our comments about Sam's first motion to compel and the Rule 82(b)(3)(F), (G), (H), and (K) findings apply equally to his second motion to compel. We therefore conclude that Kathleen was not entitled to full fees on Sam's second motion to compel.

### 4. Motion to correct clerical mistake

■ The superior court also awarded Kathleen full fees as to Sam's motion to clarify the alleged clerical mistake, characterizing it as an untimely reconsideration motion that did not address any mistake that could be considered "clerical." That characterization was correct: Sam's motion identified an asymmetry in the two QDROs, but identified no clerical error or mistake correctable under Civil Rule 60(a) or Civil Rule 60(b)(1). And Sam could have raised the issue when he sought clarification of the findings soon after they were entered.

We affirm the award of full fees as to Sam's motion to correct.[34]

### 5. The collective merit of Sam's first three motions

Because the court described Sam's three motions as "baseless and unsupported," we consider whether they collectively justified an award of full fees. That finding addressed only the three motions, not Sam's post-trial conduct generally.

■ We are well aware that trial courts are in the best position to accurately assess the parties' motives and decide whether post-trial claims were or could have been raised at trial. And trial courts must have the tools to keep litigants from sparring on after the closing trial bell has rung. But we conclude that Sam's three motions were not collectively so "baseless and unsupported" as to justify full fees under the vexatious or bad faith conduct standard of Rule 82(b)(3)(G). We reaffirm that trial courts are not without tools to provide substantial relief: they can award enhanced Rule 82(b)(3) fees—although not full fees—even absent vexatious or bad faith conduct.

In short, we reverse the full fees award as to Sam's two motions to compel and affirm the award as to Sam's motion to correct.

Kathleen supported her fees request with a certificate of counsel and an exhibit specifying the legal services required by each of Sam's motions, and Sam's appeal raises no dispute about the value of services performed in opposing each motion. We therefore affirm the $2,299.50 award of fees incurred in opposing his motion to correct, and reverse the $4,842 award of full fees incurred on his two motions to compel. We do not foreclose the superior court on remand from awarding Kathleen enhanced fees on Sam's motions to compel. But we observe that a rapid and economical close to this entire dispute is in the interest of both parties and that tertiary fees litigation is unlikely to be productive.

---

**34.** In *Johnson v. Johnson*, 214 P.3d 369, 372 (Alaska 2009), we affirmed the denial of Sam's motion to correct because the remarriage provisions "were neither a clerical error nor a mistake." We also noted that "it is not contested on appeal" that remarriage was irrelevant. *Id.* at

372–73. In context of the superior court's full-fees award, it is significant that Sam failed to rebut, or even reply to, Kathleen's superior court contention that remarriage was legally irrelevant.

**B. Whether It Was An Abuse Of Discretion To Deny Sam's Cross–Motion For An Order To Show Cause**

The July 2008 order on Sam's first motion to compel resolved his request for the Azalea items as follows: "The heirlooms from his family are to be returned to him if [Kathleen] has them. If [she] no longer has the items, she is to provide an account for what happened to them, if she knows." An October 2008 order noted that "some elements of the court's [July] order appear to yet be performed."

In December 2008 Sam cross-moved for an order requiring Kathleen to show cause why she should not be held in contempt for failing to account for the Azalea personalty in her possession. To establish that the property had been in her possession, Sam's supporting memorandum referred to his trial testimony and contended that Kathleen had submitted no response to either order. His reply memorandum referred the court to his April 2008 affidavit and noted that Kathleen had submitted no affidavit or sworn testimony in opposition, but only copies of letters from her lawyer. A January 2009 order denied Sam's motion without explanation.

Sam argues on appeal that the superior court abused its discretion by failing to require Kathleen to show what happened to his Azalea personalty and by failing to hold a hearing to determine why he did not receive the property. He invokes only Civil Rule 70 on appeal, but in the superior court he relied on only Civil Rule 90(b) and AS 09.50.010(5).[35]

We have described the requirements for a contempt order as follows:

(1) the existence of a valid order directing the alleged contemnor to do or refrain from doing something and the court's jurisdiction to enter that order; (2) the contemnor's notice of the order within sufficient time to comply with it; and in most cases, (3) the contemnor's ability to comply with the order; and (4) the contemnor's wilful failure to comply with the order.[36]

Sam asserts that we should review the denial of his motion for abuse of discretion, but the appropriate standard of review is not completely self-evident.

Although we have reviewed a decision not to hold a party in contempt after the lower court conducted a Rule 90(b) hearing,[37] we have never reviewed a decision declining to hold a hearing. Rule 90(b), which Sam does not invoke on appeal, states that the court "shall" order the accused party to show cause or issue a bench warrant upon "a proper showing," supported by affidavits.[38]

---

**35.** Rule 70 provides in part:

If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.

Rule 90(b) sets out the procedure for cases of indirect contempt:

For every contempt other than that [which occurs in actual presence of the court], upon a proper showing on ex parte motion supported by affidavits, the court shall either order the accused party to show cause at some reasonable time, to be therein specified, why the accused party should not be punished for the alleged contempt, or shall issue a bench warrant for the arrest of such party.

AS 09.50.010(5) provides that disobedience of a lawful court order constitutes contempt.

**36.** *Hartland v. Hartland*, 777 P.2d 636, 647 (Alaska 1989) (quoting *L.A.M. v. State*, 547 P.2d 827, 831 (Alaska 1976)).

**37.** *See Stuart v. Whaler's Cove, Inc.*, 144 P.3d 467, 468–69 (Alaska 2006) (affirming denial of motion for order to show cause where court had conducted hearing and determined non-moving party was not in contempt).

**38.** The rule's text ostensibly requires entry of a show-cause order if an ex parte motion is supported by affidavits. We have held that because the purpose of the affidavit requirement "is to afford the one charged with contempt the procedural due process requirement of notice of the charge against him," no affidavit is required if that notice is given by other means, such as the motion for an order to show cause. *See Taylor v. Dist. Ct. for the Fourth Judicial Dist., at Fairbanks*, 434 P.2d 679, 681–82 (Alaska 1967); *see also Cont'l Ins. Cos. v. Bayless & Roberts, Inc.*, 548 P.2d 398, 403 (Alaska 1976). Sam's motion was not ex parte and was supported by his affidavit and trial testimony. We express no opinion whether a show-cause motion unsupported by an affidavit or equivalent admissible evidence satisfies Rule 90(b).

Likewise, we decline to decide here whether Rule 90(b) always mandates entry of a show-

It is conceivable that we should apply a less deferential standard—such as de novo review—than the abuse of discretion standard Sam proposes. After all, whether Rule 90(b) mandates a show-cause order upon a "proper showing" and whether the moving party has made out a prima facie showing of contempt [39] are legal questions; the interpretation of the civil rules presents a legal question that we review de novo; [40] and we exercise our independent judgment in determining whether there are genuine, material factual disputes that cannot be resolved without an evidentiary hearing. [41] On the other hand, we review for abuse of discretion an order enforcing or declining to enforce the trial court's own decree. [42] And we generally review a superior court's procedural decisions for abuse of discretion. [43]

There is also a substantial question whether such a dispute is best analyzed under Rule 70, Rule 90, or AS 09.50.010.

It is not necessary to decide here either what review standard or what analytical standard should apply. Even under the deferential abuse of discretion review standard Sam proposes, it was error not to require Kathleen to show cause—and, if necessary, provide admissible evidence—explaining why she had not complied with the heirloom order. Given that order's words, and the course of dealings regarding the Azalea items as reflected in Sam's trial testimony, his affidavit, and the lawyers' correspondence, Kathleen should have been ordered to comply with the order requiring that she explain what she knew about the location and disposition of the items Sam sought. Sam had identified a valid order—the heirloom order—that required Kathleen to respond, and there was no dispute Kathleen had ample time in which to comply. The heirloom order was sufficiently clear that neither the issuing court nor the parties could have read it to permit Kathleen to avoid responding. The order's only possible material ambiguity concerns its phrase "if she knows." But that phrase did not excuse her from at least producing admissible evidence demonstrating that she did not know what had happened to the items.

Kathleen opposed the show-cause motion, but did not demonstrate either that she was legally excused from complying with the heirloom order or that undisputed facts established her lack of knowledge. Her lawyer's unsworn opposition could not rebut permissible inferences that Kathleen did know what had happened to the items. Instead, her lawyer's letters submitted as exhibits imply that her reasons for not complying were invalid. [44] Kathleen could have readily complied with the heirloom order by explain-

---

cause order if a "proper showing" is made, that is, if the movant has alleged admissible facts satisfying the legal requirements for civil contempt. Because Kathleen's response to Sam's motion included no sworn statements, we do not need to decide whether Rule 90(b) invariably requires entry of a show-cause order, even if the opponent proffers admissible evidence controverting the motion. We only need to consider whether a show-cause order is warranted if the opponent submits no such sworn statements.

39. *See Universal Motors, Inc. v. Waldock*, 719 P.2d 254, 259 (Alaska 1986) (holding that whether party presented evidence sufficient to establish prima facie case is question of law).

40. *Duffus v. Duffus*, 72 P.3d 313, 316 (Alaska 2003) (applying de novo review to superior court's interpretation of civil rules in post-divorce child support dispute).

41. *See Hartley v. Hartley*, 205 P.3d 342, 346–47, 350 (Alaska 2009) (applying independent judgment review to denial of former husband's motion requesting evidentiary hearing to address

parties' differing interpretations of property division). Similarly, whether a parent has made out a prima facie showing sufficient to justify a child custody support modification hearing presents a question of law that we review de novo. *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000).

42. *Horchover v. Field*, 964 P.2d 1278, 1282 (Alaska 1998) (reviewing for abuse of discretion order enforcing property division provision of divorce decree where same court had issued decree).

43. *Walker v. Walker*, 151 P.3d 444, 447 (Alaska 2007).

44. In letters to Sam's lawyer, Kathleen's lawyer argued that Kathleen should not have to return items that had not been awarded to Sam. But as to the "heirlooms," this contention was not viable after Kathleen was ordered to return the heirlooms if she had them. She was thereafter obliged to transfer the items in her possession to Sam or account for them if she knew what had happened to them.

ing what she knew of the 28–some items. And if she indeed knew nothing of them or what happened to them, saying so would have complied with the order.

■ We have recognized in other contexts that it is error not to hold an evidentiary hearing when there is a genuine issue of fact that is material.[45] If an appellant did not request an evidentiary hearing below, we will hold that it was error to fail to conduct such a hearing only if the failure was plain error.[46] Plain error exists if "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[47] Sam requested a show-cause hearing, and did not specifically ask for an evidentiary hearing on the Azalea items claim. Nevertheless, it should have been apparent from the parties' motion papers and exhibits that there were genuine, material factual disputes concerning Kathleen's compliance with the heirloom order, and that a show-cause hearing was needed to resolve those disputes.

Because we conclude that even under a deferential abuse-of-discretion standard of review it was error not to take steps to enforce the heirloom order, we vacate the order denying Sam's show-cause motion and remand for further proceedings.[48]

## C. Whether The Superior Court Erred In Handling Kathleen's Motion To Show Cause On Her Claim For Unpaid Retirement

In response to Kathleen's show-cause motion, the superior court conducted an evidentiary hearing and found that Sam had not paid Kathleen her share of his military retirement in October, November, and December 2007. Sam raises two issues concerning that finding.

He first argues that it was error to find that no payment was made "for" December, because, as a matter of federal law, the January 2, 2008 payment of Sam's military retirement was "for" December.[49] If, as Sam implies, the superior court based its finding on an interpretation of federal statutes, we would review the interpretation ruling applying our independent judgment.[50] But the order dividing Sam's retirement entitled Kathleen to a payment every month following the divorce.[51] Kathleen's motion did not seek compensation she should have received for December—rather, it sought the payment she should have received in December. Therefore, whether federal statutes established that the military disbursed payments for a month at the beginning of the next month—and thus, whether the payment Kathleen received in early January was "for"

---

**45.** *See, e.g., Brooks Range Exploration Co., Inc. v. Gordon,* 46 P.3d 942, 944–45 (Alaska 2002) (holding that superior court may not summarily enforce settlement agreement without conducting evidentiary hearing unless there are no genuine issues of material fact regarding terms of agreement); *Goliver v. McAllister,* 34 P.3d 324, 325–26 (Alaska 2001) (holding it was error not to conduct evidentiary hearing because there were genuine issues of material fact as to whether limitations period had expired); *Pedersen v. Zielski,* 822 P.2d 903, 907 (Alaska 1991) (noting that issues concerning application of discovery rule that present "genuine issues of material fact ... must be resolved [by trial court] at an evidentiary hearing").

**46.** *See In re Estate of Fields,* 219 P.3d 995, 1011 (Alaska 2009) (affirming, because appellants did not request evidentiary hearing below and failure to hold evidentiary hearing was not plain error).

**47.** *Id.*

**48.** This result makes it unnecessary to consider Sam's argument that he was entitled to a "cred-

it" for the $60,000 of personality "he never received." It is premature to consider what, if any, remedy would be appropriate for a violation of the heirloom order.

**49.** Sam cites, among other statutes, 37 U.S.C. § 212 (2006) and 10 U.S.C. § 1408(a) (2006).

**50.** *See Cooper v. Cooper,* 144 P.3d 451, 454 (Alaska 2006) ("The interpretation of a statute is a question of law which involves this court's independent judgment.").

**51.** The order's relevant passage reads:

Whereas incident to the termination of the marriage of the Parties, the Court enters this Order dividing the military retirement of [Sam].... As her property interest in [Sam's] disposable pay, [Kathleen] is awarded fifty percent of said pay.

Thus, before the military began paying Kathleen directly in January 2008, she was entitled to receive each month half of Sam's military retirement. Sam does not contend that the superior court erroneously interpreted its own order.

December—was irrelevant if she received no payment during December.

■■■ We consequently review for clear error the factual finding that Kathleen was not paid in December.[52] The evidence supported that finding. Sam's December 2007 bank statement showed that he received in that month a $3,561.90 payment from the DFAS—about twice what he would have received had Kathleen's portion been deducted. The bank statement did not show that he paid Kathleen anything that month.

There was some contrary evidence: a December DFAS statement indicated that the spousal deduction had been made, and a DFAS letter stated that "direct payments to [Sam's] former spouse should tentatively commence December 2007." But the superior court could permissibly resolve in Kathleen's favor any factual conflict between those exhibits and the evidence Kathleen was not paid in December.

The finding was consequently not clearly erroneous.

■■■ Sam next argues that it was error not to offset the retirement payments he owed Kathleen against the amount he was "awarded" on remand.[53] We read Sam's brief as contending that his proposed offset would have established that Kathleen was not the prevailing party, and was therefore not entitled to Rule 82 fees on her motion to show cause.[54] He states: "Kathleen . . . was not entitled to actual attorney[']s fees on an amount of money she would have owed to [Sam] as a set off for [the] amount he owed her."[55]

Sam's brief does not explain how he raised this argument in the superior court. The record, including superior court filings not contained in Sam's excerpt (such as the motion and opposition papers relating to Kathleen's second motion for an award of actual fees), persuades us that Sam did not preserve this issue below. We therefore review it only for plain error.[56]

■■■ Sam's cursory briefing on the point does not convince us that Sam was legally entitled to a set-off that would have foreclosed awarding Kathleen attorney's fees on her show-cause motion. Sam cites no relevant authority to support his claim of error. And, as the superior court later noted when it denied Sam's own fees motion, Sam did not receive an "award" on remand; there was simply a correction in the property division. Furthermore, the correction was largely ministerial, and the dispute on remand about the truck's value was highly circumscribed. The error and its correction concerned pre-trial events and pleadings, the property division, and findings and conclusions entered when trial ended. In comparison, Kathleen's motion to show cause was occasioned by Sam's post-divorce failure to pay her half of his retirement. We are reluctant to do anything to encourage domestic support obligors to engage in self-help by assuming that their failures to comply with the judgment will eventually be offset by correction of unrelated errors.

52. *See Hooper v. Hooper,* 188 P.3d 681, 685 (Alaska 2008) (citing *Hanson v. Hanson,* 125 P.3d 299, 304 (Alaska 2005)) (applying clear error review to factual findings in property division).

53. Our March 4, 2009 MO & J remanded for correction of the double-counting error. *See Johnson v. Johnson,* Mem. Op. & J. No. 1335, 2009 WL 564692 at *2–3 (Alaska, Mar. 4, 2009). Correcting that error benefitted Sam in the principal amount of $25,500.

54. The offset would have subtracted the amount awarded Kathleen on her show-cause motion ($6,352.17) from the amount of Sam's property division correction entered on remand ($24,418). Because the latter amount exceeded the former, Sam apparently regards himself as the prevailing party on remand. He makes the same argument more explicitly in seeking Rule 82 fees on what he calls his "monetary judgment." We discuss that argument in Part III.D.

55. The second full-fees order awarded Kathleen fees of $4,141 on her show-cause motion and on two of Sam's reconsideration motions. This order did not find vexatious or bad faith litigation conduct, but Sam does not argue that the absence of that finding barred a Rule 82(b)(3) full fees award.

56. *See Miller v. Sears,* 636 P.2d 1183, 1189 (Alaska 1981) (declining to review claims not raised below except for plain error).

And we are certainly unconvinced by the briefing before us that it was plain error to award Kathleen Rule 82(b) fees on her successful motion to show cause.

### D. Whether It Was An Abuse Of Discretion To Deny Sam's Motion For Rule 82 Attorney's Fees On The Remand Judgment

Sam argues that it was an abuse of discretion to deny his motion for Rule 82 attorney's fees on the "monetary judgment" he "obtained" on remand after a contested hearing.

Our MO & J remanded for correction of two property division errors.[57] After conducting a hearing on remand, the superior court ordered Sam to pay Kathleen $18,285.81 for unpaid retirement, interest, and actual attorney's fees, and ordered Kathleen to pay Sam $24,418 to correct the property division. This gave Sam a net judgment of $6,132.19. He then moved for Rule 82 attorney's fees. He reasoned that the "monetary judgment" awarded him in a contested proceeding without trial entitled him to fees of $4,395.24 (18 percent of $24,418), based on "his" judgment before offsetting Kathleen's awards.[58] The superior court denied Sam's motion, because the corrections favoring Sam were not "due to post-trial litigation or enforcement," but to "acknowledgment" of the double-counting trial error. In effect, it treated Sam's motion as being governed by the "divorce exception" and AS 25.24.140(a)(1), not Rule 82.

■ A trial court has broad discretion in awarding fees in divorce cases.[59] We apply our independent judgment to the legal question whether a fees motion is governed by the "divorce exception" or Rule 82.[60]

■ We discern no abuse of discretion or legal error. The superior court correctly identified the flaw in Sam's fees request: the amounts favoring Sam were not the result of new, post-trial litigation or efforts to enforce the original judgment. They were instead the result of correcting errors in the original property division. We have held that Rule 82 does not apply to divorce proceedings because "there is usually no prevailing party in a divorce case."[61] The property division corrections made on remand did not fundamentally alter the original property division; indeed, the court made adjustments to more closely achieve the 50/50 division originally intended. Sam was no more the prevailing party when the property division was corrected on remand than he was originally.

Sam describes no circumstance compelling the superior court to deviate from the divorce exception after correcting the original property division. It is of no consequence that on remand Kathleen's lawyer cross-examined Sam or that there was some dispute about the value of the truck. The remand disputes and proceedings were not extensive, and the end result reflects what would have occurred had the issues been correctly raised and resolved at trial. And Kathleen's argument on remand—that the court should divide the assets equally—resembled the argument a party would make in a divorce trial.

We have never held in a divorce case that a superior court must apply Rule 82 to remand proceedings when correcting errors in the original property division. And we do not have to decide here whether a superior court could, in its discretion, apply Rule 82 to a post-appeal remand proceeding in a divorce case.

**57.** *Johnson v. Johnson*, Mem. Op. & J. No. 1335, 2009 WL 564692 at *1 (Alaska, Mar. 4, 2009).

**58.** Per Rule 82(b)(1), the fees award for a party recovering a money judgment in a contested matter decided without trial is 18 percent of the judgment's first $25,000.

**59.** *Carr v. Carr*, 152 P.3d 450, 457 (Alaska 2007) (applying abuse of discretion standard to trial court's denial of husband's request for fees in divorce action).

**60.** *See Sanders v. Barth*, 12 P.3d 766, 767–68 (Alaska 2000) (applying independent judgment standard in reviewing whether Rule 82 or divorce exception applies to particular case).

**61.** *McDonald v. Trihub*, 173 P.3d 416, 429 (Alaska 2007) (citing *Koller v. Reft*, 71 P.3d 800, 808 (Alaska 2003)). In comparison, this rationale does not apply on appeal, where the prevailing party "can be identified with ease." *Hilliker v. Hilliker*, 768 P.2d 115, 115–16 (Alaska 1988) (holding that divorce exception does not apply on appeal of divorce judgment).

The superior court did not err in implicitly applying the divorce exception to Sam's fees motion, and in denying Sam's motion on that basis.[62]

## IV. CONCLUSION

For these reasons, we REVERSE Kathleen's award of full fees on Sam's two motions to compel, VACATE the denial of Sam's motion for a show-cause order, and REMAND for further proceedings on his motion to show cause.

We otherwise AFFIRM the rulings Sam challenges on appeal, including: the award of $2,299.50 on Kathleen's first motion for full fees; the order finding that Sam did not pay Kathleen support in December 2007; the award of $4,141 on Kathleen's second motion for full fees; and the order denying Sam's motion for Rule 82 fees on the judgment on remand.

CARPENETI, Chief Justice, not participating.

**62.** This conclusion renders irrelevant any question whether Sam recovered a "money judgment" on remand, *cf.* Rule 82(b)(1), or whether his fees request, if meritorious, should have been based on his net award, after deducting Kathleen's awards.