*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RENE E. LIMERES, | ) | |
| | ) | Supreme Court No. S-15489 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-09292 CI |
| v. | ) | |
| | ) | O P I N I O N |
| AMY W. LIMERES, | ) | |
| | ) | No. 7081 – February 12, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Rene E. Limeres, pro se, Nenana, Appellant. David W. Baranow, Law Offices of David Baranow, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

FABE, Justice.
MAASSEN, Justice, with whom WINFREE, Justice, joins, dissenting.

## I.    INTRODUCTION

A couple with three children divorced after 15 years of marriage.  In 2012 the superior court ordered the father to pay roughly $1,500 per month in child support. This child support calculation relied on the superior court's finding, based on the parties' testimony at trial, that the father's income was $40,000 annually despite his self-reported financial documents showing significantly less income.  The father appealed and we

affirmed the superior court's findings and support order in early 2014.[1]  Before that appeal was resolved, the father separately moved to modify his support obligation, filing similar self-reported financial documents and arguing that his actual income was less than $10,000 per year as shown on his 2013 tax return.  The superior court denied his motion to modify without an evidentiary hearing.  It also awarded close to full attorney's fees to the mother despite the fact that she raised her fee request in her opposition to the motion to modify and never made a separate motion for fees.  The father appeals the denial of his motion to modify his child support obligation without an evidentiary hearing.  He also appeals the superior court's award of attorney's fees in the absence of a motion for fees.

We affirm the superior court's denial of the father's motion to modify child support without a hearing and conclude that an evidentiary hearing was not required because the father presented no new evidence that would require a hearing.  But it was error to award attorney's fees without either requiring the mother to file a motion for fees or advising the father that he had a right to respond to the fee request made in the mother's opposition brief.  We therefore vacate the superior court's fee award and remand to give the father an opportunity to respond.

## II.    FACTS AND PROCEEDINGS

This appeal marks the second time we have been asked to review the child support determination made by the superior court in this case.  The underlying facts remain the same as those we described in the first appeal:

> Amy and Rene Limeres were married in 1997 and had three children together.  Amy is an attorney; Rene has made money from a variety of self-employment activities, including guiding, writing articles about the outdoors, and selling

---

[1]     *Limeres v. Limeres*, 320 P.3d 291 (Alaska 2014).

-2-                                    7081

books. The couple separated in July 2011, and Amy filed for divorce. . . . The court held a two-day divorce and custody trial in July 2012. Following trial it granted the requested divorce and awarded sole legal and physical custody of the three children to Amy. The court found that Rene's net annual income was $40,000 and that he was obligated to pay child support of $1,514 per month retroactive to August 1, 2011. . . . Rene filed a motion for reconsideration, which the [superior] court denied. Rene appeal[ed].[2]

Although Rene was represented by counsel during the initial divorce proceeding,[3] he has represented himself in the subsequent proceedings.

In the first appeal, Rene challenged the superior court's "determination of his child support obligations . . . [and] its denial of attorney's fees," among other issues.[4] We affirmed the superior court's order on all issues.[5] Most relevant here, we observed that "Rene testified at trial about his 'generation of substantial funds, in the hundreds of thousands of dollars, in terms of book sales, inventory on hand, royalties and guiding fees.' "[6] Then three months after trial, "Rene submitted his 2011 tax returns and a Child Support Affidavit that showed income of $8,426.82."[7] Faced with this conflicting evidence, the superior court found that Rene earned "at least $40,000 annually."[8] Reviewing for clear error, we declined to overturn the superior court's finding: "[G]iven

---

[2] *Id.* at 295.

[3] *Id.* at 302.

[4] *Id.* at 294-95.

[5] *Id.* at 295.

[6] *Id.* at 297.

[7] *Id.*

[8] *Id.* at 296.

Rene's earlier testimony," we explained, "we cannot say that the court clearly erred when it found his yearly income to be approximately $40,000 despite what he reported on his income tax return."[9]  We also concluded that the superior court did not err in denying additional attorney's fees to Rene after an initial award of interim fees, in connection with the divorce proceedings, under AS 25.24.140(a)(1).[10]

Prior to our March 2014 decision, Rene filed numerous motions to stay enforcement of the superior court's support order, to modify his support obligation, and to expedite the superior court's consideration.  The superior court denied these motions.  In response Rene filed over a dozen motions to reconsider, which the superior court also denied.  Most relevant here, in January 2013 Rene filed a motion for modification of child support based on his alleged material change of circumstances.  Rene supported this motion with documents similar to those he had presented during the divorce proceedings just a few months earlier:  He filed a new child support guidelines affidavit and his latest tax return (now for 2012) showing an income of $5,770.93, all from self-reported business profits and his Permanent Fund Dividend (PFD).  The superior court denied this motion for modification in July 2013.  Rene's subsequent motion for reconsideration alleged that he was entitled to an evidentiary hearing on the evidence he had presented, but the trial court denied reconsideration in August 2013.

Five months later, in January 2014, Rene filed a second motion for modification of child support.  That motion is the subject of the current appeal.  Along with this 2014 motion for modification, Rene also filed another tax return and child support guidelines affidavit, now showing his financial information for 2013 and claiming an annual income of $7,120, entirely from self-reported business profits.  Rene

---

[9]     *Id.* at 297.

[10]     *Id.* at 302.

also submitted a sworn affidavit alleging financial hardship in an effort "to enter additional evidence into the [r]ecord to support [his] claim that the current obligation [was] not based on a realistic assessment of [his] current earning capacity." The affidavit claimed that Rene had no more books left to sell "nor any funds to print more" and that, because of child support liens against him, his low credit score made it impossible for him to borrow money to print more books. Rene's affidavit also stated that, despite the fact that he had "aggressively sought additional employment with every local business," he had only been able to secure part-time work that "barely pa[id] enough for [him] to survive on."

Amy opposed Rene's motion to modify his support obligation. In her opposition brief she questioned the veracity of Rene's reported income of $7,120 from his 2013 tax return, which she asserted was "necessarily inaccurate on its face." She suggested that it was nonsensical for Rene to be "earn[ing] less than one-half the Alaskan minimum wage rate for a single individual working a full-time, 40 hour work week." Amy also challenged Rene's assertion that he had no more books to sell, given that Rene had received the whole book inventory in the superior court's property division yet reported no book sale profits on his 2013 tax return. Amy stated that "Rene would apparently leave it to this Court to determine on which occasion (or both) he did perjure himself as to the value/proceeds of these assets." Amy concluded by noting that Rene's "alleged proofs of his most recent *de minimis* earnings . . . strain credibility well past the bursting point."

Amy also asserted that Rene's motion to modify support was "devoid of merit" and "frivolous in nature." Amy thus requested, in her opposition brief, an "award of actual attorney's fees [under Alaska Civil Rule 82] and additional sanctions pursuant

to Alaska Civil Rule . . . 11."[11]  Amy stated that she had incurred attorney expenses for "[a] total of 2.5 hours attorney time at $225.00 per hour . . . to pursue and draft opposition and related pleadings, for a total of $562.50."  But Amy did not attach any billing statements to support that figure, nor did she file a separate motion to request attorney's fees as normally required under Civil Rule 82.  Rene did not respond to Amy's substantive arguments or the question of attorney's fees.

On February 4, 2014, the superior court denied Rene's motion for modification of support.  At the same time, without requiring that Amy make a separate motion for attorney's fees, the court awarded Amy $500 in attorney's fees but declined to impose Rule 11 sanctions "for the filing of a plainly meritless and frivolous motion."  Rene then filed a motion for reconsideration, alleging that he was entitled to an evidentiary hearing on his motion to modify support and contesting the award of attorney's fees in the absence of a motion for fees under Civil Rule 82.  The motion for reconsideration was denied, and Rene now appeals.

---

[11]      In cases not involving a monetary judgment, Civil Rule 82 generally allows the prevailing party to recover partial attorney's fees.  Alaska R. Civ. P. 82(b)(2).  The rule allows enhanced fees upon consideration of certain factors listed in the rule, including full attorney's fees for "vexatious or bad faith conduct" under Rule 82(b)(3)(G).  Civil Rule 11 requires attorneys and unrepresented parties to certify that the pleadings and motions they file are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Alaska R. Civ. P. 11(b)(1).  We have interpreted it to authorize sanctions against parties who violate the rule.  *Alaska State Emps. Ass'n v. Alaska Pub. Emps. Ass'n*, 813 P.2d 669, 671 (Alaska 1991) (citing *Keen v. Ruddy*, 784 P.2d 653, 658 (Alaska 1989)).

## III. STANDARD OF REVIEW

"We use our independent judgment to decide whether it was error not to hold an evidentiary hearing."[12]  This general principle applies equally in the context of motions to modify child support:  "We review de novo whether a moving party has made a prima facie showing sufficient to justify a custody or child support modification hearing."[13]  Thus we "will affirm a denial of a modification motion without a hearing if, in our independent judgment, . . . the allegations are so general or conclusory . . . as to create no genuine issue of material fact requiring a hearing."[14]

"We review an award of attorney's fees for abuse of discretion,"[15] so a fee award "will not be disturbed on appeal unless it is 'arbitrary, capricious, or manifestly unreasonable.' "[16]  However, "[w]hether the superior court applied the appropriate legal standard in its consideration of a fee petition presents a question of law that we review de novo."[17]

---

[12]     *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001); *see also Hartley v. Hartley*, 205 P.3d 342, 346-47 (Alaska 2009).

[13]     *Hill v. Bloom*, 235 P.3d 215, 219 (Alaska 2010) (alterations omitted) (quoting *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999)).

[14]     *Id.* (second alteration in original) (quoting *Harrington*, 984 P.2d at 3).

[15]     *Martin v. Martin*, 303 P.3d 421, 424 (Alaska 2013) (citing *McDonald v. Trihub*, 173 P.3d 416, 420 (Alaska 2007)).

[16]     *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (quoting *Ferguson v. Ferguson*, 195 P.3d 127, 130 (Alaska 2008)).

[17]     *Powell v. Powell*, 194 P.3d 364, 368 (Alaska 2008) (citing *McDonald*, 173 P.3d at 420).

Finally, "[w]e review for abuse of discretion 'decisions about guidance to a pro se litigant.' "[18] "An abuse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling."[19]

## IV. DISCUSSION

### A. Rene's Motion For Modification Of Child Support, Filed Only Five Months After The Denial Of His Previous Motion For Modification, Did Not Require A New Evidentiary Hearing Because It Did Not Provide Substantially New Evidence.

Rene has argued, both in his motion for reconsideration before the trial court and on appeal here, that the superior court erred in denying an evidentiary hearing on his motion to modify child support. Because this argument raises a legal issue relating to the necessity of holding an evidentiary hearing, we address this question de novo.[20]

Alaska Civil Rule 90.3(h), which governs the modification of child support orders, provides for modification "upon a showing of a material change of circumstances."[21] The rule states that "[a] material change of circumstances will be presumed if support as calculated under [Rule 90.3] is more than 15 percent greater or less than the outstanding support order."[22] But the burden is on the moving party to

---

[18] *Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013) (quoting *Shooshanian v. Dire*, 237 P.3d 618, 622 (Alaska 2010)).

[19] *Limeres*, 320 P.3d at 296 (quoting *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011)).

[20] *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001).

[21] Alaska R. Civ. P. 90.3(h)(1).

[22] *Id.*

make a prima facie showing that this presumption applies.[23]  Thus, while "[t]rial courts must take [into account] all evidence necessary to accurately reflect the parties' economic reality,"[24] a motion to modify child support may be denied without an evidentiary hearing when the moving party has "not presented sufficient evidence of permanently reduced income to show a material change in circumstances."[25]  In other words, we have emphasized that "[a] hearing is not required when there is no genuine issue of material fact.  'Generalized allegations of factual issues that other record evidence convincingly refutes' do not create genuine issues of material fact."[26]  In addition, we have held that a party's "bare claim," even in a sworn affidavit, does not create a dispute of material fact.[27]

Moreover, to create an issue of material fact, a party must present substantially *new* evidence showing changed circumstances — not simply "additional

---

**23**      *See Hill v. Bloom*, 235 P.3d 215, 219 (Alaska 2010) (reviewing "[w]hether a moving party has made a prima facie showing sufficient to justify . . . a child support modification hearing" (first alteration in original) (quoting *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999))).

**24**      *Routh*, 19 P.3d at 595-96 (quoting *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992)).

**25**      *Hill*, 235 P.3d at 217.

**26**      *Wilhour v. Wilhour*, 308 P.3d 884, 888 (Alaska 2013) (internal citation and alteration omitted) (quoting *Acevedo v. Burley*, 944 P.2d 473, 475 (Alaska 1997)).

**27**      *Epperson v. Epperson*, 835 P.2d 451, 453 & n.4 (Alaska 1992) (holding that a party's "bare claim" that the custodial parent had low living expenses did not create a genuine issue of material fact); *see also Hill*, 235 P.3d at 220 n.11 ("Without more information, . . . [a] bare assertion . . . is insufficient to warrant an evidentiary hearing.").

evidence bolstering . . . previously adduced evidence and arguments."[28] We addressed this issue in *Hill v. Bloom*, a case analogous to the present one, where a parent similarly moved for modification of child support on the basis of allegedly low, self-reported business income just a few months after the initial child support determination.

In that case, Hill had presented her latest financial documents showing a decrease in income from the business she owned, and at trial she had argued that her decrease in income was permanent.[29] The trial court found instead that the decrease was an "aberration" and ordered her to pay child support based on her earlier, higher income.[30] Just five months after this evidentiary hearing, Hill moved for modification of her child support obligations, arguing that her continued low income constituted a changed circumstance.[31] Hill supported this motion with a sworn affidavit and business summaries showing her income for the preceding six months.[32] Yet the superior court found that this evidence was not enough to constitute new information for the purpose of requiring an evidentiary hearing — despite the fact that it was technically new evidence — because it was completely consistent with the information she had recently presented at trial.[33] We agreed: "This evidence of Hill's actual income . . . was not presented to the superior court in the [prior] hearing, so in that sense it was new evidence, but it was entirely consistent with the evidence and arguments that Hill did

---

[28]     *Hill*, 235 P.3d at 219.

[29]     *Id.* at 217-18.

[30]     *Id.* at 218.

[31]     *Id.*

[32]     *Id.* at 218, 219.

[33]     *Id.* at 218.

present to the court at the hearing," and thus we held that the superior court did not err in denying an evidentiary hearing.[34]

We also emphasized that only five months had passed between the initial child support determination and Hill's motion to modify child support based on changed circumstances.[35] We suggested that, without drawing "a bright line establishing a minimum period of time that a party must wait . . . before . . . fil[ing] a motion to modify support,"[36] a very short time frame tends to make it less likely that a new evidentiary hearing would be required.[37] Accordingly, we held that the superior court had not erred in denying Hill's motion without conducting a new evidentiary hearing:

> Given the relatively brief passage of time between the February 2008 evidentiary hearing and the July 2008 motion to modify, and given that the evidence presented in support of the motion to modify was essentially the same as the evidence presented in the evidentiary hearing, we cannot say that the court clearly erred in concluding that Hill had presented no new evidence for the purpose of considering her motion to modify child support.[38]

The essence of this conclusion is that no hearing is required where a party files evidence at trial and then, shortly thereafter, refiles the same or similar information in an attempt to claim changed circumstances.

---

[34]     *Id.* at 219-20.

[35]     *Id.* at 218, 220.

[36]     *Id.* at 218.

[37]     *See id.* at 220 ("Hill's actual income for the first half of 2008 did not make a prima facie showing for modification of child support given the relatively short amount of time that passed between the evidentiary hearing and the motion to modify.").

[38]     *Id.* at 219.

This analysis applies equally in the current case. Rene argues that the evidence he presented creates an issue of material fact with regard to his level of income and his earning capacity. Rene explains that he provided (1) a tax return and child support affidavit showing that his self-reported annual income was well below the level determined by the superior court, and (2) an affidavit attesting that he had sold out of his supply of books (a primary source of income for him), had sustained a leg injury in a snowmobile accident that reduced his earning capacity, and had "aggressively" sought employment but had only been able to secure a part-time, minimum-wage job. Rene contends that the statement about his book inventory "was not seriously challenged" by Amy, nor did Amy present a "cogent argument . . . to dispute" his testimony about his new part-time job.

Amy counters that Rene is not entitled to "repetitive and successive hearings" on the proper amount of child support "simply because he has provided . . . tax returns to the court." We agree. Under *Hill v. Bloom*, none of the evidence Rene presented was sufficient to create a dispute of material fact because it did not offer any substantially new information beyond what he had recently presented at trial.

First, the short timeline of Rene's successive motions supports the conclusion that a new evidentiary hearing was not required here. In that respect, this case echoes *Hill*'s suggestion that the "brief passage of time between the . . . evidentiary hearing and the . . . motion to modify" counsels against requiring a new evidentiary hearing.[39] Rene filed his first motion to modify child support in January 2013, just two and a half months after the initial trial and determination of child support in November 2012. After briefing by the parties, the superior court denied Rene's motion in July 2013. Rene immediately filed a motion for reconsideration in which he argued

---

[39]     *See id.*

that he was entitled to an evidentiary hearing, which the superior court denied. Just five months after that, in January 2014, Rene filed the motion to modify child support that is now before us on appeal. Moreover, at the time of filing — notwithstanding the large number of motions filed in the intervening period — only slightly more than a year had passed since the initial divorce decree and child support order. The short passage of time between each of these stages thus points toward the conclusion that a new hearing is not required.

Furthermore, the evidence Rene filed with his motion was substantially equivalent to the evidence he had recently presented at trial. First, the tax return and child support guidelines affidavit that Rene submitted with his 2014 motion to modify were very similar to the documents he had submitted to the court in the divorce trial and in his 2013 motion to modify support. The newly submitted tax return and child support affidavit mirrored his earlier submissions in both character and content: The 2011 tax return submitted in the divorce trial showed a total income of $8,427 coming entirely from self-reported business profits and Rene's PFD, while the 2013 tax return showed a total income of $7,120 solely from self-reported business profits.

In addition to the fact that the *amount* of reported income is highly similar across these years, the nature of the income is also identical, in that Rene's non-PFD income consists entirely of self-reported business earnings. To the extent that it differs at all from his earlier filings, Rene's latest tax return actually provides less information by failing to include a Schedule C showing the details of his business earnings. And Rene's new child support guidelines affidavit, like the affidavit he submitted during the divorce trial, simply matches the amount of income reported on the corresponding tax return. So, like in *Hill*, this evidence "was entirely consistent with the evidence and

arguments" that Rene did present to the court at trial.[40]  The superior court had already found Rene's self-reported tax return and child support affidavit to be less credible than his testimony suggesting a much higher income, and we upheld that finding.[41]  Now, because Rene's ostensibly new tax return shows "essentially the same" amount and source of income as the tax return already considered at trial, it fails to present sufficiently new evidence to create a dispute of material fact warranting a new evidentiary hearing.[42]

Nor does Rene's supplemental affidavit provide sufficient evidence to require a new hearing.  We have previously held in the child support context that "a court may deny a hearing where the moving party makes only bare assertions . . . that fail to create a genuine issue of material fact."[43]  In *Hill*, these "bare assertions" included Hill's sworn statement that she had been diagnosed with a kidney disorder requiring surgery. Because she did not provide information about the costs or recovery time for the surgery, the court concluded that "Hill's medical condition [did] not cross the evidentiary threshold to require an evidentiary hearing."[44]  Here, similarly, Rene offered no evidence beyond his own unsupported assertions that he had "no more big books . . . left" to sell, "nor any funds to print more," and that he had "aggressively sought additional employment" but could only secure a part-time, minimum-wage job.

---

[40]     *See id.*

[41]     *Limeres v. Limeres*, 320 P.3d 291, 296-97 (Alaska 2014).

[42]     *See Hill*, 235 P.3d at 219.

[43]     *Ward v. Urling*, 167 P.3d 48, 53 n.18 (Alaska 2007); *see also Hill*, 235 P.3d at 220 n.11.

[44]     *Hill*, 235 P.3d at 220 n.11.

While the dissent considers Rene's assertions to be highly significant, it fails to address or distinguish our conclusion in *Hill v. Bloom* that this type of unsupported claim does not justify a new hearing. The dissent emphasizes that Rene's assertions differed from the more generalized statements that failed to justify a hearing in *Ward v. Urling*.[45] But in *Ward* we did not actually decide the question whether an evidentiary hearing was required or indicate where the line might be drawn. Instead we simply "note[d] that it [was] highly questionable whether Ward was . . . entitled to an evidentiary hearing,"[46] making no further pronouncements as to what *would* justify a hearing. In *Epperson v. Epperson*, similarly, we concluded that general statements were insufficient to justify a hearing but did not draw a hard line beyond which a hearing is required.[47] And in *Hill* we concluded that even the more specific contentions made by Hill failed to require a hearing.[48] So although Rene's statements about diminished book sales provided more detail than the statements in *Ward* and *Epperson*, Rene — like Hill — provided little information and no documentation to support his assertions. Thus, we conclude that Rene's "bare assertion[s]," made without any supporting information, are "insufficient to warrant an evidentiary hearing."[49]

Rene now claims that he also offered information about a snowmobile injury that forced him to miss part of his book-selling season. In fact, Rene made this assertion in several affidavits pertaining to the *2013* motion to modify child support. By

---

[45]     Dissent at 24-25.

[46]     167 P.3d at 53 n.18.

[47]     835 P.2d 451, 453, n.4 (Alaska 1992).

[48]     235 P.3d at 219, 220 n.11.

[49]     *See id.* at 220 n.11.

contrast, his 2014 affidavit did not mention this fact, let alone provide further information to support it. Similarly, Rene now invites the court "to fully investigate [his] finances," and he made a similar offer in earlier proceedings before the superior court. But he neither provided any further financial documentation nor mentioned this offer at the time of his 2014 motion to modify support. So these assertions, too, fail to meet the bar for requiring an evidentiary hearing.

In sum, given the similarity of the evidence presented at each of these stages, coupled with the short passage of time between each stage, we conclude that Rene was not entitled to a new evidentiary hearing at the time of his 2014 motion to modify support.

**B.      It Was Error To Award Near-Full Attorney's Fees Without A Motion For Fees And Without Advising Rene Of His Right To Respond.**

Rene also argues that it was improper for the superior court to award near-full attorney's fees to Amy given that she did not file a motion for fees as required by Alaska Rule of Civil Procedure 82(c). Because this question relates to the superior court's decision not to advise a pro se litigant of his right to respond before granting attorney's fees, "[w]e review for abuse of discretion."[50]

As Rene correctly noted in his motion for reconsideration before the superior court and notes again on appeal here, Civil Rule 82(c) provides that "[a] motion is required for an award of attorney's fees under this rule or pursuant to contract, statute, regulation, or law." This requirement gives the opposing party a chance to respond to

---

[50]     *See Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013) (citing *Shooshanian v. Dire*, 237 P.3d 618, 622 (Alaska 2010)).

the fee request. Accordingly, "it is error to award attorney's fees before the opposing party has an opportunity to respond."[51]

Rule 82 also prescribes a formula for calculating attorney's fees, specifying that a court may only vary from the standard award of partial fees after considering certain factors listed in the rule.[52] As we recently explained, "[w]e have held that in general, a trial court has broad discretion to award Rule 82 attorney's fees in amounts exceeding those prescribed by the schedule of the rule, so long as the court specifies in the record its reasons for departing from the schedule."[53] Yet we have also clarified that "full fees may not be awarded under Rule 82(b)(3) except under Rule 82(b)(3)(G),"[54] the provision for "vexatious or bad faith litigation conduct." Therefore, "[a] Rule 82(b)(3) award of full fees is 'manifestly unreasonable' absent a finding of bad faith or vexatious conduct."[55]

Here, Amy made no motion for attorney's fees. Instead, Amy's request for fees was contained within her merits brief in opposition to Rene's motion to modify child support. Amy's opposition brief requested actual attorney's fees under Civil Rule 82 and sanctions under Civil Rule 11. It also briefly stated that her lawyer had worked "[a] total of 2.5 hours attorney time at $225.00 per hour . . . for a total of $562.50." The superior court effectively treated this request as a nonconforming motion for attorney's fees,

---

[51] *Gallant v. Gallant*, 945 P.2d 795, 800 (Alaska 1997) (citing *Bowman v. Blair*, 889 P.2d 1069, 1075 (Alaska 1995)).

[52] *See* Alaska R. Civ. P. 82(b).

[53] *Kollander v. Kollander*, 322 P.3d 897, 907 (Alaska 2014) (alterations omitted) (quoting *Johnson v. Johnson*, 239 P.3d 393, 400 (Alaska 2010)).

[54] *Id.* (quoting *Johnson*, 239 P.3d at 403).

[55] *Id.* (quoting *Johnson*, 239 P.3d at 400).

despite the fact that no such motion had been made, and it awarded $500 of actual attorney's fees to Amy.[56] Thus the superior court awarded near-full attorney's fees without any motion for fees, and without informing Rene that it intended to treat the language in Amy's brief as a separate motion for fees.

In *Breck v. Ulmer* we held that the courts have a duty to "inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[57] Although our subsequent case law has "decline[d] to extend *Breck* to require judges to warn pro se litigants on aspects of procedure when the pro se litigant has failed to at least file a defective pleading,"[58] we have also recognized special circumstances giving rise to a heightened duty when the trial court itself deviates from normal procedures. For instance, in *Bush v. Elkins*, where the superior court removed a pro se litigant's name from the case caption and instructed him to cease filing pleadings, we held that "a duty to inform [the pro se party] of his ability to file a response . . . arose from the superior court's actions."[59]

---

[56] Although the superior court found that Rene's motion was "meritless and frivolous," it declined to impose a monetary sanction. It is unclear whether the phrase "meritless and frivolous" is intended to reflect a finding that Rene's motion constituted "vexatious and bad faith conduct" justifying a possible full fee award under Rule 82(b)(3)(G). However, we need not consider that question here because we conclude that the enhanced fee award was improper on other grounds.

[57] *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) (italics omitted).

[58] *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989).

[59] 342 P.3d 1245, 1254 (Alaska 2015).

We considered the same question in *Pedersen v. Blythe*, a case that presented similar procedural issues to the current one.[60] There, in ruling on a motion to dismiss, the superior court considered evidence beyond the pleadings, thereby converting the motion to dismiss into a motion for summary judgment, without informing the pro se litigant of this procedural shift or giving him a chance to reply.[61] We emphasized that a motion for summary judgment requires that opposing parties have a "reasonable opportunity" to respond.[62] Moreover, we explained, "[t]he 'reasonable opportunity' is particularly important for pro se parties, given that trial judges are obligated to inform pro se litigants of procedural requirements" in this context.[63] Accordingly, we held that "the superior court erred when, in deciding the motion to dismiss, it considered matters outside the pleadings without advising Pedersen of its intent to do so and giving him a reasonable opportunity to respond."[64]

A motion for attorney's fees similarly requires that "the opposing party [be given] an opportunity to respond."[65] Yet in the current case, the superior court converted Amy's opposition to the motion to modify support into a motion for attorney's fees without advising Rene of "its intent to do so and giving him a reasonable opportunity to

---

[60]    292 P.3d 182 (Alaska 2012).

[61]    *Id.* at 185.

[62]    *Id.*

[63]    *Id.* (citing *Genaro v. Municipality of Anchorage*, 76 P.3d 844, 846 (Alaska 2003)).

[64]    *Id.* at 183.

[65]    *Gallant v. Gallant*, 945 P.2d 795, 800 (Alaska 1997) (citing *Bowman v. Blair*, 889 P.2d 1069, 1075 (Alaska 1995)).

respond."[66]  In light of our case law on this issue, we conclude that it was error to award attorney's fees without a motion for fees and without notifying Rene of his right to respond to Amy's request for fees.  If the superior court chose to treat Amy's merits brief as a nonconforming motion for fees, it had a duty to inform Rene of this procedural shift and give him a reasonable opportunity to respond.[67]

Rene's right to respond is particularly important in light of the fact that Amy requested full fees under Rule 82(c) and sanctions under Rule 11.  Because full attorney's fees are only permitted after a finding of "vexatious or bad faith conduct," Rene should have had an opportunity to contest Amy's allegation that his motion was "frivolous."  Indeed, the record shows that Rene did contest this allegation in his motion for reconsideration, arguing that his motion was "a reasoned and legitimate cry for justice" and that it was not "meritless" or "frivolous" because he submitted "[s]ufficient supporting evidence."  If he had been afforded an opportunity to respond to Amy's request for fees, Rene might have made these same arguments in his response.  The failure to afford Rene this opportunity, as Rene argued, "represents a . . . violation of due process."

Accordingly, we find that the superior court's fee award constituted an abuse of discretion.  We thus vacate the superior court's order of attorney's fees against Rene and remand to give Rene an opportunity to respond to Amy's request for fees and sanctions.

---

[66]  *Pedersen*, 292 P.3d at 183.

[67]  Although Amy contends that the fee request in her brief put Rene "on notice of the request being made," this argument is beside the point.  Even if Rene could discern from Amy's brief that she was requesting fees, he had no way of knowing that the court would treat this portion of the merits brief as an independent motion for fees.

On remand, after giving Rene an opportunity to respond, the superior court may then decide whether an enhanced fee award is appropriate. In making this determination, the superior court should follow the two-step process that we have described in past cases. Specifically, for a fee award under Rule 82(b)(3), the trial "court must first calculate what award is authorized under the schedule set forth in Civil Rule 82[(b)(2)] and then state its reasons for deviating from that award."[68] A Rule 82(b)(3) award of full fees is manifestly unreasonable absent a finding of bad faith or vexatious conduct.[69] The superior court's decision on remand, therefore, should not only consider Rene's response to Amy's fee request but should also provide an explanation for any fee award that deviates from the formula specified in Rule 82(b)(1).

In determining whether a litigant's claims "were made vexatiously or in bad faith," we have previously explained, "[t]he issue is not whether they were ultimately unsuccessful, but whether they were collectively or individually so lacking in merit that it is permissible to infer that [the party] acted in bad faith or engaged in vexatious litigation conduct."[70] So the fact that Rene did not prevail on the merits does not necessarily mean his motion was filed vexatiously or in bad faith. If the superior court finds, even after considering Rene's response, that the motion to modify support was vexatious or in bad faith within the meaning of Rule 82(b)(3)(G), it should make a specific finding to that effect. Only after such a finding would enhanced attorney's fees be warranted.

---

[68] *Kowalski v. Kowalski*, 806 P.2d 1368, 1373 (Alaska 1991) (citing *Mullen v. Christiansen*, 642 P.2d 1345, 1351 (Alaska 1982)).

[69] *Johnson v. Johnson*, 239 P.3d 393, 400 (Alaska 2010).

[70] *Id.* at 401.

## V. CONCLUSION

We AFFIRM the superior court's denial of an evidentiary hearing on Rene's motion to modify child support. We VACATE the fee award and the Rule 11 sanctions and REMAND to the superior court to afford Rene an opportunity to respond to Amy's request for full attorney's fees and sanctions.

MAASSEN, Justice, with whom WINFREE, Justice, joins, dissenting.

I respectfully dissent from the court's holding that it was not error to deny an evidentiary hearing on Rene Limeres's motion to modify child support. I believe that Rene presented unrefuted evidence that was sufficient to raise a genuine issue of material fact about whether he had suffered a permanent reduction in his income.[1] He was therefore entitled to a hearing.

When Rene filed the motion to modify, his child support was based on the superior court's $40,000 estimate of his 2011 income. As we described in our 2014 opinion, this estimate was based in large part on Rene's testimony at trial, which conflicted with the relatively modest income of $8,426.82 disclosed by his late-filed income tax return.[2] At an interim custody hearing Rene had estimated his annual income as $40,000 or "closer to $38,000."[3] At trial he testified "about his 'generation of substantial funds, in the hundreds of thousands of dollars, in terms of book sales, inventory on hand, royalties and guiding fees, and claim[ed] to have provided at least $23,000.00, prior to the parties' separation, for the direct needs of the children over the course of one year.' "[4] Rene was "unwilling or unable to provide specifics as to the amount of money he had made in recent years from guiding," but he did give numbers

---

[1]     *See Hill v. Bloom*, 235 P.3d 215, 219 (Alaska 2010) ("We 'will affirm a denial of a modification motion without a hearing if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory . . . as to create no genuine issue of material fact requiring a hearing.' " (alteration in original) (quoting *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999))).

[2]     *Limeres v. Limeres*, 320 P.3d 291, 296-97 (Alaska 2014).

[3]     *Id.*

[4]     *Id.* at 297 (alteration in original).

for his book sales, describing one book that "he said had generated between $273,000 and $364,000" in gross revenues; testifying that "the hardcover edition of the same book generated revenue of $22,000 to $29,000"; and identifying two other books that he said "generated as much as $42,000 and $17,000 in revenues respectively."[5] Whatever money Rene may have made from guiding, it is clear that the books — both sales of his own inventory and royalties from sales by others — were a significant source of income that helped justify the superior court's $40,000 estimate.

I agree that Rene's January 2013 motion to modify child support — with which he simply submitted his 2012 income tax return, showing little difference from his reported income in 2011 — was inadequate to raise a genuine issue of material fact and entitle him to an evidentiary hearing. But in his January 2014 motion Rene presented a different case.

By affidavit, Rene directly addressed his book-sales income source, asserting in straightforward terms that it was no longer viable. He attested that he had "no more big books (Alaska Fishing) left, nor any funds to print more"; that because of damage to his credit rating "borrowing money to print more books is not an option"; and that he "had to 'give away' [his] latest book to a royalty publisher for 10%," a rate he implied was too low to generate any significant income. I do not agree that these statements of fact with clear financial consequences can be dismissed as "bare assertions . . . that fail to create a genuine issue of material fact," as the court does today.[6]

In *Ward v. Urling*, the "bare assertions or generalized allegations" this court found likely to be insufficient to justify a hearing were characterized as "allegations

---

[5]     *Id.*

[6]     Opinion at 14 (alteration in original) (quoting *Ward v. Urling*, 167 P.3d 48, 53 n.18 (Alaska 2007)).

[that] expressed little more than [the father's] ongoing dissatisfaction with the court's previous factual findings pertaining to [the mother's] income."[7]   To support this discussion in *Ward* we cited *Epperson v. Epperson*, in which the father claimed that the mother had "unusually low living expenses" justifying a deviation from the Alaska Civil Rule 90.3 child support formula but "failed to set forth specific facts substantiating his bare claim," nor did he "specifically dispute" any of the expenses she listed in her financial declaration and Child Support Guidelines Affidavit.[8]   Here, in contrast, Rene identified a major source of his past income and explained why it no longer existed; these are not "bare assertions or generalized allegations" like those we have found insufficient before.  And while Rene's statements of fact may be subject to challenge, Amy filed no evidence in opposition, relying largely (as the court does today) on the fact that Rene had attempted modification before without success.[9]

Because Rene's 2011 income was substantially based on the availability of a particular commodity — books — for him to sell, and because he asserted by affidavit that the books were gone and he lacked the funds to print more, he demonstrated a genuine issue of material fact as to whether his income was permanently reduced.  This showing entitled him to an evidentiary hearing.  I therefore dissent from today's opinion affirming the judgment of the superior court.

---

[7]     *Ward*, 167 P.3d at 53 n.18.

[8]     *Id.*; *Epperson v. Epperson*, 835 P.2d 451, 453 n.4 (Alaska 1992).

[9]     Amy countered Rene's claims about lost book-sales income simply by questioning whether he could already have depleted "the entirety of the book inventory" granted him in the division of marital property.  Even if this statement from an attorney's memorandum had evidentiary value, it would simply be to highlight a dispute over a highly material issue of fact.