*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHARLEY McANALLY, | ) | |
| | ) | Supreme Court No. S-15906 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-11-01916 CI |
| v. | ) | |
| | ) | O P I N I O N |
| VIRGIE THOMPSON, JIM | ) | |
| JOHANSEN, CAROLYN | ) | No. 7183 – June 23, 2017 |
| GRABOWSKI, and CITY OF | ) | |
| HOUSTON, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Kenneth P. Jacobus, Anchorage, for Appellant. Danielle M. Ryman and Sarah J. Shine, Perkins Coie LLP, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.    INTRODUCTION

The City of Houston fired its police captain shortly before disbanding its police department. The captain claims that he was terminated in bad faith in order to stop ongoing investigations into city leaders. He challenges the superior court's refusal to allow his claim under the Alaska Whistleblower Act, a jury instruction stating that

termination for personality conflicts does not constitute bad faith, and an award of attorney's fees and costs. We conclude that the court's refusal to allow his claim under the Whistleblower Act, its decision to give the personality conflict instruction, and its award of attorney's fees and costs were not erroneous and therefore affirm in all respects.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

The City of Houston hired Charley McAnally to serve as a police officer in 2009. In October 2010 the City promoted him to the at-will position of police captain;[1] in the absence of a police chief, the police captain served as the head of the police force in Houston. McAnally received generally positive employment reviews in April, October, and December 2010.

McAnally claims that he told Mayor Virgie Thompson soon after she became mayor that he saw several mistakes in the City's budget and believed that Treasurer and Personnel Officer Carolyn Grabowski was manipulating numbers.[2] McAnally also claims that Thompson agreed with his belief and that she also suspected Grabowski of manipulating the budget.

According to McAnally, in either December 2010 or January 2011 Thompson and Deputy Mayor Jim Johansen "determined that they were going to get rid of Captain McAnally." On January 9, 2011, McAnally told Thompson that Grabowski was under investigation for embezzlement. He claimed that Thompson told Grabowski

---

[1]    An at-will employee may be terminated without good cause. *See Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1131 (Alaska 1989) ("Employees hired on an at-will basis can be fired for any reason that does not violate the implied covenant of good faith and fair dealing.").

[2]    McAnally supports many of his factual assertions only by citing to the complaint he filed in this case and not to the record.

about the investigation so Grabowski could "cover whatever tracks and information [that] might have been discovered through a complete investigation"; he claimed Grabowski then contacted McAnally to complain about the investigation.

McAnally asserted he then began investigating the mayor for hindering a prosecution. He stated that Thompson threatened to investigate the police department in retaliation for his investigations. McAnally apparently contacted the FBI regarding the investigations and met with two FBI agents in the parking lot behind the Dairy Queen in Wasilla.[3] He also referred his embezzlement and hindering-prosecution allegations to the Palmer District Attorney's Office, which asked him to have the FBI or the Alaska Bureau of Investigation investigate "due to the ongoing political situation in Houston."

On December 31, 2010, around the time of McAnally's investigations, he was involved in an altercation with a private citizen. Tom Hood, Houston's fire chief; Christian Hartley, a lieutenant at the Houston Fire Department; and Houston firefighter Jason Starrett all claimed that McAnally challenged a private citizen to a fight. On January 10, 2011, the incident appeared in a local newspaper, and McAnally suspected Hartley of leaking the incident. McAnally was quoted in the article, but he testified that he only confirmed details of the incident because the paper already knew about it. On January 11 Thompson suspended McAnally for speaking to the press about the incident, a violation of City policy. McAnally claimed that Thompson suspended him as retaliation for his investigation.

In February McAnally had a counseling session with Thompson. Councilman Lance Wilson was present for that session and later prepared a statement that appears in the record. According to Wilson's statement Thompson claimed that

---

³ At trial McAnally did not present any evidence suggesting that an FBI investigation was ongoing.

McAnally failed to respond to a call despite being on duty and that, when she finally did contact him, he responded in an evasive and insubordinate manner. McAnally disagreed and said that he had informed the mayor that he was in Wasilla on city business and had not been insubordinate. Thompson disagreed, but McAnally then revealed that he had recorded their previous conversation. That caused Thompson to retract her disagreement about McAnally's whereabouts, but she inquired into the nature of his business in Wasilla. McAnally responded that it was part of a confidential investigation. Wilson, after listening to McAnally's recording, agreed that McAnally had told Thompson of his whereabouts and that McAnally did not sound insubordinate. Four days later McAnally filed a grievance, but the City did not act on it.[4]

On March 7 Thompson wrote up McAnally for submitting a police schedule to the 911 dispatcher two days late. He claims that he filed a grievance challenging that write-up and that the City did not act on that grievance, but that grievance does not appear in the record. On March 16 Thompson gave McAnally a mostly negative performance review. Shortly after the negative performance review, McAnally informed the City Council that he and the FBI were investigating Thompson and Grabowski.

On March 20 a local newspaper published an article detailing the FBI investigation of the City of Houston. The article reported that Deputy Mayor Jim Johansen contacted the paper to offer his doubt that the FBI was actually investigating; he stated, "It's not real. It's lies. They're trying to set up the mayor to take a fall."

On March 23 the City Council held a special session to determine whether it would accept Thompson's March 16 performance review of McAnally; the mayor recused herself from that session. The City Council rejected the performance review and requested that Johansen prepare a new review with the assistance of Councilmembers

---

[4] The grievance does not appear in the record.

Wilson and Ruth Blanchard. Johansen's review does not appear in the record, and McAnally claims that it never got past the drafting stage. While Johansen was performing this review he was charged with fourth-degree assault by McAnally based on a citizen complaint. McAnally was a witness in that case.

On April 26 the City Council voted to terminate McAnally's employment. About two weeks later the City disbanded the police department due to pre-existing budget constraints.

**B.      Proceedings**

In July 2011 McAnally sued the City of Houston, Thompson, Grabowski, and Johansen (collectively "the City"), alleging a breach of the implied covenant of good faith and fair dealing, a constitutional due process violation, and retaliatory discharge. His claims were premised on his contention that the City wrongfully terminated him in retaliation for his involvement in criminal investigations regarding Thompson and Grabowski.

In September 2012 the City moved for summary judgment on all of McAnally's claims. The City also moved for summary judgment to limit damages and argued that McAnally's lost wages could not extend beyond the date the City eliminated the police department and that McAnally could not recover damages he could have avoided with reasonable efforts by accepting comparable employment following his termination. The superior court granted the City's motion only with respect to McAnally's due process claim.

The superior court initially scheduled trial to begin in December 2012. Trial was continued repeatedly, and it eventually began in November 2014 on McAnally's claims for breach of the covenant of good faith and fair dealing and retaliatory discharge. On October 16, 2013, before one of those continuances, McAnally filed his trial brief, which asserted that he intended to pursue a claim under the Alaska

Whistleblower Act. He did not file a motion to amend his complaint to add the new claim. The deadline for McAnally to amend his complaint was November 11, 2011. The superior court dismissed that claim explaining that every claim must be pleaded, that the City would be subjected to substantial prejudice if it were forced to defend a claim introduced that late, and that the facts giving rise to the claim were known to McAnally at the time he filed his complaint.

At mid-trial, the superior court granted the City's motion for a partial directed verdict and dismissed Grabowski as a defendant. The trial proceeded to its conclusion, and the jury returned a unanimous verdict in favor of the remaining City defendants. The City moved for an attorney's fee award of $106,803.45 pursuant to the City's earlier offer of judgment under Alaska Civil Rule 68;[5] the City had offered McAnally $5,000 in March 2013 to satisfy his claims and McAnally did not accept the offer. Despite McAnally's claim that the offer of judgment was invalid, the superior court granted the City's Rule 68 attorney's fees motion. The court also awarded the City $14,564.31 in costs.

McAnally appeals.

III.    STANDARD OF REVIEW

We review "the interpretation of a statute de novo, adopting the rule of law most persuasive in light of precedent, reason, and policy."[6] "We review a trial court's factual findings under a clearly erroneous standard. A factual finding is clearly

---

[5]    As we discuss in more detail later in this opinion, Rule 68 sets out the circumstances under which a party may recover attorney's fees after making an offer of judgment to an adverse party that was rejected.

[6]    *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009) (citing *Alaskans for Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

erroneous when we are 'left with a definite and firm conviction on the entire record that a mistake has been made.' "[7]

We review a trial court's denial of leave to amend a complaint for abuse of discretion.[8] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[9] We apply our independent judgment to determine whether a challenged jury instruction correctly states the law.[10] " 'We review an award of attorney's fees for abuse of discretion,' so a fee award 'will not be disturbed on appeal unless it is "arbitrary, capricious, or manifestly unreasonable." ' "[11] "But we consider de novo '[w]hether the superior court applied the appropriate legal standard in its consideration of a fee petition,' including 'whether [the] superior court correctly determined a settlement offer's compliance with Rule 68.' "[12]

## IV.   DISCUSSION

McAnally makes three arguments in his appeal: (1) the superior court abused its discretion when it prohibited him from bringing a claim under the Alaska Whistleblower Act; (2) the superior court erred by allowing Jury Instruction Number 14

---

[7]     *Fernandes v. Portwine*, 56 P.3d 1, 4 (Alaska 2002) (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[8]     *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Servs.*, 45 P.3d 657, 671 (Alaska 2002).

[9]     *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015) (citing *Tufco, Inc. v. Pac. Envtl. Corp.*, 113 P.3d 668, 671 (Alaska 2005)).

[10]     *Henrichs v. Chugach Alaska Corp.*, 250 P.3d 531, 535 (Alaska 2011).

[11]     *Marshall v. Peter*, 377 P.3d 952, 956 (Alaska 2016) (quoting *Limeres v. Limeres*, 367 P.3d 683, 686 (Alaska 2016)).

[12]     *Id.* (alterations in original) (first quoting *Limeres*, 367 P.3d at 686-87; then quoting *Tagaban v. City of Pelican*, 358 P.3d 571, 575 (Alaska 2015)).

to incorrectly state the law; and (3) the superior court abused its discretion when it awarded the City 50% of its reasonable attorney's fees under Rule 68.

### A. The Superior Court Did Not Abuse Its Discretion When It Dismissed McAnally's Claim Under The Alaska Whistleblower Act.

On October 16, 2013, McAnally noted in his trial brief that he planned to pursue a claim against the City for a violation of the Alaska Whistleblower Act.[13] This was the first time McAnally had raised that claim. Trial was set to begin on November 4, 2013, and the superior court had previously set a November 11, 2011 deadline to amend pleadings. McAnally argued that he would "be able to show that his discharge was in retaliation for requesting an investigation of the Mayor and City Clerk by the United States Federal Bureau of Investigation. This is in violation of the Alaska Whistleblower Act." He continued, "Whether or not these protections are actionable as a violation of due process of law, they are relevant to good faith and fair dealing." McAnally did not file a motion to amend his complaint to add this claim.

The superior court dismissed the claim for several reasons. First, the court agreed with the City that every claim must be pleaded. And the court agreed that the City would be subjected to substantial prejudice if it were forced to defend a claim that had been added three weeks before trial without the opportunity to pursue discovery or file a dispositive motion on the claim. The court further noted that the facts giving rise to the whistleblower claim were known to McAnally at the time he filed his complaint, so the claim was not newly discovered.

McAnally argues that the Whistleblower Act both provides a separate cause of action and also provides evidentiary support for his claim that the City violated the covenant of good faith and fair dealing. He argues that the court abused its discretion

---

[13] AS 39.90.100-.150.

in dismissing a standalone claim under the Whistleblower Act and also prohibiting him from presenting evidence regarding the Whistleblower Act to bolster his claim that the City breached the covenant of good faith and fair dealing.

First, with respect to McAnally's standalone claim under the Whistleblower Act, it is not clear whether McAnally intended to seek leave from the superior court to amend his claim or whether he was simply asserting that he intended to pursue the claim without pleading it. McAnally was clearly prohibited from pursuing the claim without pleading it: Alaska law requires that all claims be pleaded so as to give the defendant "fair notice of the nature of the claim."[14]

Assuming that McAnally intended to amend his pleading, Alaska Civil Rule 15(a) provides that a party may amend a pleading only by leave of court or by written consent of the adverse party where leave is sought after a responsive pleading was filed. Rule 15(a) states that "leave shall be freely given when justice so requires."

McAnally argues that the City would not have been prejudiced if he had been allowed to add the claim because the City was aware of the facts underlying the claim even before McAnally filed suit. Thus McAnally claims that the superior court abused its discretion when it dismissed his whistleblower claim. But McAnally points to no law providing that the standard for amending a complaint is simply that the facts were known to the other party before litigation began. Being generally aware of the facts of a possible claim does not mean that the City would not be prejudiced by its inability to seek discovery or file a dispositive motion before the start of trial. And in dismissing

---

[14]     *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1168 n.4 (Alaska 1998); *see also* Alaska R. Civ. P. 10(d) ("A party filing a complaint, counterclaim, or cross-claim seeking relief under any specific statute is required to cite the statute relied upon in parentheses following the title of the pleading or in the heading for the section asserting the statutory claim.").

McAnally's claim the court pointed to *Valdez Fisheries Development Association, Inc. v. Alyeska Pipeline Service Co.*, a case in which Valdez Fisheries moved to add new claims seven weeks before trial.[15]  In *Valdez Fisheries* the superior court found that the facts giving rise to the new claims "were 'largely coexistent' with the facts giving rise to Valdez Fisheries' prior claims[] and that there was 'no adequate reason' why Valdez Fisheries had not previously asserted the proposed new claims."[16]  We agreed and concluded that the superior court did not abuse its discretion in denying leave to amend.[17]  The same reasoning applies here.  McAnally waited over two years to assert his whistleblower claim, and he did so not by seeking leave to amend but rather by casually mentioning the claim in his trial brief three weeks before trial.  There is nothing to suggest that justice requires granting McAnally leave to amend his complaint three weeks before trial when he did not even request leave to amend from the court.

Second, McAnally argues that the superior court erred by not allowing him to present evidence of the Whistleblower Act violation as part of his breach of good faith and fair dealing claim.  He argues that there is no requirement that evidence be pleaded, and he adds that the Whistleblower Act "sets a standard for what constitutes good faith and fair dealing, which is something that the jury is entitled to know."  But as the City correctly observes, "the trial court's order did not bar McAnally from presenting a whistleblower theory or whistleblower-related evidence in support of his two other claims."  The court simply dismissed McAnally's claim as a standalone claim.[18]

---

[15]    45 P.3d 657, 671 (Alaska 2002).

[16]    *Id.*

[17]    *Id.*

[18]    At oral argument counsel for McAnally suggested that the superior court
(continued...)

The court did not abuse its discretion in denying McAnally's attempt to assert a Whistleblower Act claim three weeks before trial, and it did not bar McAnally from presenting whistleblower-related evidence in support of his other claims. We therefore affirm the court's decision.

**B.    Jury Instruction Number 14 Was A Correct Statement Of The Law.**

McAnally challenges Jury Instruction Number 14 as an incorrect statement of the law. The instruction stated:

> An employer may transfer, demote or terminate an employee because of a personality conflict with another employee or supervisor. Transferring, demoting or terminating an employee because of such conflict does not violate the covenant of good faith and fair dealing.

McAnally argues that "this instruction allow[ed] Captain McAnally to be terminated in bad faith simply because there [was] a personality conflict."

The instruction, however, was an accurate statement of relevant law from our decision in *Era Aviation, Inc. v. Seekins*.[19] In that case Seekins sued Era Aviation

---

[18]    (...continued)
denied a proposed jury instruction that would have used the Whistleblower Act in this manner and that this was error. The only proposed jury instruction on the Whistleblower Act that appears in the record did not clarify the way the jury was to use the Act and was proposed before the court dismissed McAnally's Whistleblower Act claim. Nothing in the record suggests that McAnally objected to the absence of a jury instruction about the Whistleblower Act "set[ing] a standard for what constitutes good faith and fair dealing." McAnally's counsel conceded at oral argument that McAnally was able to present evidence of retaliatory discharge to the jury. And the court instructed the jury to find for McAnally if the jury found that there was a retaliatory discharge.

[19]    973 P.2d 1137, 1141 (Alaska 1999) ("Given the at-will nature of Era's employment contract with Seekins, we cannot say that the company's alleged desire to avoid a personality conflict between two of its employees would, if proved, amount to an impermissible motive for firing Seekins.").

for breach of the covenant of good faith and fair dealing, alleging that she could only be terminated for good cause despite an "at-will" termination clause in her employment contract.[20] The superior court denied Era Aviation's motion for summary judgment, but we reversed.[21] We concluded that even if Seekins proved that the real reason she was terminated was due to a personality clash, "these facts would be legally insufficient to warrant a finding that Era breached the implied covenant of good faith and fair dealing."[22] *Era Aviation* makes it clear that an employer does not violate the implied covenant of good faith and fair dealing by terminating an at-will employee for a personality conflict with another employee. Case law from other jurisdictions is in accord.[23]

McAnally seeks to distinguish *Era Aviation*. He argues that *Era Aviation* was "a single-issue, summary judgment case." He continues, "The only issue involved was whether or not, in an at-will employment case, firing someone because she could not get along with a supervisor was or was not a violation of the covenant of good faith and fair dealing." McAnally argues that his case involves many other issues, such as whether

---

[20]     *Id*. at 1138.

[21]     *Id*. at 1138, 1142.

[22]     *Id*. at 1141.

[23]     *See Velantzas v. Colgate-Palmolive Co.*, 536 A.2d 237, 239 n.2 (N.J. 1988) ("An employer is, of course, free to discharge an employee if a genuine 'personality conflict' exists." (quoting *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1233 (7th Cir. 1986))); *Sabetay v. Sterling Drug, Inc.*, 497 N.Y.S.2d 655, 656-57 (N.Y. App. Div. 1986) (noting that termination statement in a personnel manual did not limit an employer's right to terminate an at-will employee for various reasons including for personality conflicts); *Cty. of Giles v. Wines*, 546 S.E.2d 721, 722, 725 (Va. 2001) (concluding that an at-will employee had no property right in employment and could therefore be terminated for personality conflicts).

the employer has acted in violation of public policy. But that is not the question here; McAnally argues that Jury Instruction Number 14 is an inaccurate statement of the law, but it is not. *Era Aviation* clearly stands for the proposition that an employer may terminate an at-will employee for a personality conflict and not breach the covenant of good faith and fair dealing. The City proposed the jury instruction based on the fact that there was a personality conflict between McAnally and the named defendants, and the court correctly instructed the jury that employment decisions based on personality conflicts are not breaches of good faith and fair dealing. Instruction Number 14 does not indicate that an employer may terminate an employee in bad faith or otherwise in violation of the law. Indeed, the court defined for the jury the covenant of good faith and fair dealing and instructed the jury to find bad faith if "the discharge was done either for the purpose of depriving the employee of a benefit reasonably expected from the employment agreement, or the employer did not act in a way which a reasonable person would regard as fair." We therefore conclude that Jury Instruction Number 14 was an accurate statement of the law and the superior court did not err in giving this instruction to the jury.

**C.     The Superior Court Did Not Err In Awarding The City Attorney's Fees and Costs.**

McAnally challenges the superior court's attorney's fees award to the City of $106,803.45 under Alaska Civil Rule 68. Under Rule 68, a party defending a claim "may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money . . . or to the effect specified in the offer." According to the rule, where there are multiple defendants and judgment eventually rendered by the court is at least 10% less than the offer, the offeree shall pay reasonable

actual attorney's fees incurred by the offeror from the date of the offer.[24] "[I]f the offer was served more than 60 days after the date established in the pretrial order for initial disclosures required by Civil Rule 26 but more than 90 days before the trial began, the offeree shall pay 50 percent of the offeror's reasonable actual attorney's fees."[25] "We review de novo whether a settlement offer triggers Rule 68."[26]

In March 2013 the City offered McAnally $5,000 to satisfy his claims in an offer of judgment. The City provided its initial disclosures to McAnally in October 2011, and trial took place in November 2014. Thus, the City's offer was served more than 60 days after its initial disclosures and more than 90 days before trial began; the City therefore satisfied Rule 68's requirements for 50% of its attorney's fees incurred after making the offer. The City incurred $213,606.90 in attorney's fees after making the offer, and it moved for $106,803.45, or 50%, of those fees. The superior court granted the City's motion.

McAnally argues that the City's Rule 68 offer should be considered invalid. "A Rule 68 offer of judgment may be invalid where a party disingenuously makes a low offer so that it may benefit from Rule 68."[27] "Even though a purpose of Rule 68 is to encourage settlement and avoid protracted litigation, offers of judgment made without any chance or expectation of eliciting acceptance or negotiation do not accomplish the

---

[24]    Alaska R. Civ. P. 68(b).

[25]    Alaska R. Civ. P. 68(b)(2).

[26]    *Marshall v. Peter*, 377 P.3d 952, 957 (Alaska 2016).

[27]    *Lowell v. Hayes*, 117 P.3d 745, 760 n.76 (Alaska 2005) (citing *Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983)).

purposes behind the rule."[28]  In order to trigger Rule 68 "[a]n offer must 'serve the purpose of [the rule]': 'encourag[ing] settlement and avoid[ing] protracted litigation.' "[29]

The superior court found that the City's offer was reasonable and was made in good faith.  The court noted that the City's offer was made more than 18 months after the start of litigation.  Further, the court found the City's offer was a reasonable calculation of McAnally's damages:  the City closed the police department entirely three weeks after McAnally was fired, meaning McAnally would have earned only $1,200 before losing his job anyway.[30]  And the $5,000 offer was $5,000 more than the jury awarded him.  The City also took the position that McAnally failed to mitigate his damages by accepting comparable employment, further adding to the reasonableness of the City's offer.  We conclude that the superior court did not err in concluding the City's offer of judgment was valid under Rule 68.

McAnally next contends that it is illogical to try a case where the damages are only $5,000, meaning he honestly believed that his damages were much greater than that.  But Rule 68 is not limited to offers large enough to justify the expense of a lawsuit.  Indeed, we have upheld attorney's fees awards under Rule 68 in cases where the settlement offer was less than the City's offer in this case.[31]

---

[28]     *Beal v. McGuire*, 216 P.3d 1154, 1178 (Alaska 2009).

[29]     *Marshall*, 377 P.3d at 957 (alterations in original) (quoting *Anderson v. Alyeska Pipeline Serv. Co.*, 234 P.3d 1282, 1289 (Alaska 2010)).

[30]     McAnally argues on appeal that the City closed the police department as a pretext for limiting his damages, but it seems unlikely that a City would shut down an entire police force just on the chance that it would have to pay out damages to one employee several years after the event.  Regardless, this argument is not an issue on appeal.

[31]     *See Marshall*, 377 P.3d at 957-58 (offers of $2,651.17 and $100).

Finally, McAnally claims that the $319,641.75 in fees that the City incurred were unreasonable because "there were no efforts to minimize fees and a large number of attorneys and paralegals were used in the case." He asserts that the parties could have settled the case for "1/4 or 1/5 of the amount that the City decided to spend on attorney fees." He contends that the City simply pursued a "scorched earth" litigation tactic. The superior court found that the City's fees were reasonable: counsel for the City represented three individuals and the City of Houston, and each of the defendants was defending against a punitive damage claim. The parties participated in over three years of litigation and a three-week trial. We conclude that the superior court did not err in its view that the City's accrual of attorney's fees and use of multiple attorneys and paralegals were "surely reasonable."

The superior court correctly determined that Rule 68 applied and did not abuse its discretion in awarding Rule 68 attorney's fees to the City. The City's offer came at a time in the litigation when it could accurately assess the damages, the offer appeared to be reasonable given the fact that the City closed the police department down three weeks after McAnally was terminated, and the City's fees were fees incurred over three years of litigation and a three-week trial. The City's offer in this case is easily distinguishable from offers that we have found do not serve Rule 68's legitimate

purpose.[32] We therefore affirm the court's award to the City of 50% of its fees under Rule 68.[33]

McAnally also challenges the superior court's award of $14,564.31 in costs under Alaska Civil Rule 79(f);[34] specifically, he argues that $7,791.15 for legal research and $3,486.75 for deposing McAnally are excessive and should be vacated. But McAnally does not explain why the costs were excessive. Rule 79(f) states that costs for depositions[35] and computerized legal research[36] are recoverable as allowable costs. We affirm the superior court's ruling awarding costs to the City.

## V.    CONCLUSION

We AFFIRM the superior court in all respects.

---

[32]    *See Anderson*, 234 P.3d at 1290 ("Alyeska's ten-dollar offer was made shortly after it filed its answer. Anderson was seeking $500,000 in damages for an undisputedly serious head injury caused by a table that belonged to Alyeska. Alyeska's planned defense relied on a newly enacted statute that had not been interpreted by the courts."); *Beal*, 216 P.3d at 1178 ("The offers of judgment in this case were for one dollar. Most of the defendants served their individual offers of judgment before they asserted their counterclaims. Their offers were nothing more than tactical demands that plaintiffs dismiss their claims to avoid exposure to Rule 68 fees awards. The amount offered was effectively zero in what appears to be a good faith dispute involving potentially substantial damages. In the context of this case, these offers could not be considered valid offers of settlement or compromise, or valid attempts to encourage negotiation.").

[33]    Because we affirm the superior court's award under Rule 68, we do not consider the City's alternative argument for fees under Rule 82.

[34]    Rule 79(f) sets out the items that a prevailing party may recover as costs.

[35]    Alaska R. Civ. P. 79(f)(6).

[36]    Alaska R. Civ. P. 79(f)(11).